Robert W. Brownlie (Bar No. 138793)
Ryan T. Hansen (Bar No. 234329)
**BROWNLIE HANSEN LLP**
10920 Via Frontera, Suite 550
San Diego, California 92127
Tel:    858.357.8001
Robert.Brownlie@brownliehansen.com
Ryan.Hansen@brownliehansen.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT FOR

# THE CENTRAL DISTRICT OF CALIFORNIA

STEPHEN PULEO and MICHELLE
PULEO BOUTIN as Trustees of the
STEPHEN PULEO, JR. AND
MICHELLE PULEO BOUTIN TRUST;
LEE E. HUGHES and SUSAN G.
HUGHES as Trustees of THE LOMA
GATO TRUST DATED JULY 7, 2015;
ARMEN E. PHELPS as Trustee of THE
ARMEN EDWARD PHELPS TRUST;
DANIEL W. CHINN and JULIANA
CHINN as Trustees of THE CHINN
FAMILY TRUST; DENNIS JOHN
WOODRUFF as Trustee of THE
STRATA TRUST FBO DENNIS
WOODRUFF; GEORGE SPICER;
ARMAND MARK ESTRADA as Trustee
of THE ESTRADA FAMILY TRUST
DATED AUGUST 30, 2018; JAESHIN
HA President of JAE YOUNG
CORPORATION; CHRIS KINGDON
and GAIL PEDERSON as Trustees of
THE PEDERSON KINGDON LIVING
TRUST DATED DECEMBER 27, 2016;
DWAYNE H. MASEMER and ALICE B.
MASEMER; TOMMY JOAQUIN
HANCOCK and MARTHA AGNEW
HANCOCK; BARRY LAUFMAN and
HELENE LAUFMAN as Trustees of
THE BARRY AND HELENE
LAUFMAN TRUST; KENNETH S.
STACEY; JOHN NICHOLAS and
KRISTIN GROSS as Trustees of THE
JOHN NICHOLAS AND KRISTIN
GROSS TRUST U/A/D APRIL 13, 2010;
MICHAEL K. LAI and FANNY DEA

)

CASE NO.

**COMPLAINT FOR VIOLATION
OF FEDERAL SECURITIES
LAW, ELDER FINANCIAL
ABUSE, STATE SECURITIES
LAW VIOLATIONS, FRAUD,
NEGLIGENT
MISREPRESENTATION, AND
CONSPIRACY TO COMMIT
FRAUD**

**JURY TRIAL DEMANDED**

{00011532}

| | |
|---|---|
| 1 | LAI; NORIKO H. BARNES and ) |
| | CHRISTOPHER D. BARNES; FRANK ) |
| 2 | CARPI; CARL JOHN KUGLER III; ) |
| | FRED TOMPKIN, Owner of TOMPKIN ) |
| 3 | INVESTMENTS, INC.; KRYSTAL ) |
| | PESCATORE, Owner of RKP EQUITIES) |
| 4 | LLC, A NEW YORK LLC OPERATING ) |
| | IN FLORIDA; STEVEN DENTE and ) |
| 5 | DENISE DENTE; AMBER GOFUS and ) |
| | RUSSELL GOFUS; NILS GUNTHER ) |
| 6 | and KATHRYN GUNTHER; FARID A. ) |
| | MASOUD; DENNIS E. MOELLER as ) |
| 7 | Trustee of the DENNIS E. MOELLER ) |
| | LIVING TRUST DATED MARCH 15, ) |
| 8 | 2006; DONGSHENG XING and ) |
| | SHUQIN FENG as Trustees of the ) |
| 9 | DONGSHENG XING & SHUQIN FENG ) |
| | FAMILY TRUST; PAUL E. LARSON; ) |
| 10 | FORREST B. ALLEN and KATHY ) |
| | ALLEN as Trustees of THE F. AND K. ) |
| 11 | ALLEN FAMILY TRUST OF 1998; ) |
| | RICHARD HODGE and MARY ) |
| 12 | HODGE, Owners of THE LOYD ) |
| | HODGE & SONS, INC. ) |
| 13 | CORPORATION; ROBERT ) |
| | CANTERBURY, Owner of ) |
| 14 | CANTERBURY ENTERPRISES, LLC; ) |
| | GERALD H. DUBIN, Owner of GHD ) |
| 15 | PROPERTIES, LLC; SUNJAY DAWAR,) |
| | Owner of OSR PROPERTIES, LLC; ) |
| 16 | JACQUELINE ROBIN, Owner of ) |
| | HUNGRY MOOSE BUILDING ) |
| 17 | PARTNERS, LLC; CHARLES KO AND ) |
| | SUSANA WU; KASSIM JAHANGIR ) |
| 18 | MUGHAL; RICK SCHILLINGER; ) |
| | DANIEL LOREDO; KENNETH K. LEE ) |
| 19 | as Trustee of THE LEE LIVING TRUST;) |
| | LEQIN SHI; LAWRENCE SILVER; ) |
| 20 | EDWARD ROSS as Trustee of THE ) |
| | EDWARD ERICH ROSS REVOCABLE ) |
| 21 | LIVING TRUST; HADIA FINLEY as ) |
| | Trustee of THE HADIA MARIANNE ) |
| 22 | FINLEY LIVING TRUST; YAOYAO ) |
| | FU as Trustee of THE YAOYAO FU ) |
| 23 | LIVING TRUST; JING WANG and ) |
| | CHENSHENG WANG; RAYMOND ) |
| 24 | GOULD and SANDRA GOULD as ) |
| | Trustees of THE GOULD FAMILY ) |
| 25 | TRUST; ASHIT JAIN and RENU JAIN ) |
| | as Trustees of THE ASHIT K. JAIN AND) |
| 26 | RENU JAIN REVOCABLE LIVING ) |
| | TRUST DATED DECEMBER 6, 2013; ) |
| 27 | ABDUL S. MASOUD and HABIBA ) |
| | MASOUD as Trustees of THE MASOUD ) |
| 28 | FAMILY TRUST; PETER J. ) |

{00011532}                                          2

COMPLAINT
CASE NO.

1  MAINGUY; JUDITH MCCLINTIC as
   Trustee of THE JUDITH PEEPLES
2  MCCLINTIC RESIDUARY TRUST;
   ETHAN MORRIS, Owner of PWEVC,
3  LLC; EMILE KISHEK and TAGHREED
   KISHEK as Trustees of THE KISHEK
4  FAMILY TRUST; JAROMIR HOLAN;
   KANMAM F. WONG as Trustee of THE
5  TESTAMENTARY TRUST OF
   KENNETH WONG; ROBERT F.
6  WALFORD and BEVERLY J.
   WALFORD as Trustees for LIFE
7  ESTATE, STEVEN M. WALFORD
   AND BRIAN R. WALFORD
8  REMAINDERMEN; ANTONIO LOPES
   and MARIA LOPES; SAMUEL
9  HEIMAN and CATHERINE HEIMAN as
   Trustees of THE HEIMAN LIVING
10 TRUST; CARLOS PRADO LYON;
   FRANK TENTEROMANO as Trustee of
11 THE FRANK TENTEROMANO
   REVOCABLE TRUST; DOUGLAS C.
12 EDMAN as Trustee of THE DOUGLAS
   C. EDMAN REVOCABLE TRUST;
13 HENRY H. BREWSTER, JR. and
   BARBARA WHITE BREWSTER;
14 BRIAN BARNETT; MICHAEL RUBLE
   and VIRGINIA RUBLE as Trustees of
15 THE MICHAEL & VIRGINIA RUBLE
   FAMILY TRUST OF 2008; MITCHELL
16 R. CHWATT; STEVE PARKER and
   JILL PARKER, Owners of SHPARK,
17 LLC; SCOTT A. CLARK and PATRICIA
   CLARK; JANE LEE as Trustee of THE
18 JANE LEE 2018 TRUST; DAVID J.
   GRANT and LOIS D. SCHULTZ-
19 GRANT; RUSSELL LAWSON as
   Trustee of THE LAWSON FAMILY
20 TRUST; LAURA BEHRENS; JAMES J.
   MCELROY and JULIEANN H.
21 MCELROY as Co-equal Managers of
   PENNY CREEK, LLC, A
22 WASHINGTON STATE LIMITED
   LIABILITY COMPANY; GERALD
23 WALDMAN, Owner of BROOKLAND
   SQUARE, LLC; WILLIAM RENDAHL
24 as Trustee of THE BARBARA C.
   RENDAHL EXEMPTION TRUST,
25 established under the WILLIAM B. AND
   BARBARA C. RENDAHL FAMILY
26 TRUST; MICHELE GERSON as Trustee
   of THE GERSON FAMILY TRUST;
27 WILLIAM K. HEIDEN and CRISTINA
   S. HEIDEN; CALVIN ROY KNIGHTS
28 as Trustee of THE KNIGHTS FAMILY

{00011532}                          3

COMPLAINT
CASE NO.

1  TRUST; MARK D. BIRNBAUM
President of DELAJON REALTY
2  CORP.; JESS E. BENTON and ANN M.
BENTON as Trustees of THE BENTON
3  FAMILY 1996 TRUST; PAUL
TOOGOOD, Owner of TOOGOOD
4  VINEYARDS, LLC; PHILIP CIRRONE,
Owner of LISA'S REAL ESTATE
5  STUFF, LLC; DEBRA A. MAGIER;
ELLIOT SILVERSTONE; SCOTT
6  GLEN KIMBALL; PHILIP W.
JOHNSON RLT; RONALD A.
7  DINNOCENTI, Individually; RONALD
A. DINNOCENTI, Managing Partner,
8  D&L ASSOCIATES, L.P.; STEVE
ULENE, Member of GOSUM, LLC;
9  HEIDE FEINGOLD and ADAM
FEINGOLD as Trustees of THE
10  KEVLAR FAMILY LIMITED
PARTNERSHIP; STEVEN NINCHUN
11  SHENG AND ROUNDA SHENG as
Trustees of THE SHENG TRUST
12  CREATED FEBRUARY 13, 2002;
RICHARD M. DELUNA and MATILDE
13  F. DELUNA as Trustees of THE
DELUNA FAMILY TRUST UNDER
14  AGREEMENT DATED SEPTEMBER 4,
1996; JOANNE D. SCHOTT as Trustee
15  of THE SURVIVOR'S TRUST
CREATED UNDER THE E.
16  LAURENCE SCHOTT AND JOANNE
D. SCHOTT TRUST DATED
17  SEPTEMBER 3, 1996 AS AMENDED
AND RESTATED; WILLIAM E.
18  SMITH; LITA WEST as Trustee of THE
LITA WALKER WEST LIVING TRUST
19  2017; LAKE POINTE HOTEL
COMPANY, LLC; CCHEYENNE
20  MOUNTAIN HOTEL FI. LLC;
BRANSON HOTEL CORPORATION;
21  INTERQUEST HOTEL PARTNERS,
LLC; WILLIAM CRAIG and
22  GWENDOLYN CRAIG, as Trustees for
RAYFORD CROSSING, LTD, a Texas
23  limited partnership; STEVEN BRINSON,
Owner of BRINSON REALTY, LLC;
24  MARTIN B. SNOW as Co-trustee of
THE BONNIE BOLDING
25  SWEARINGEN TRUST; JIM TAKIS,
BRUCE FRANKLIN, TOM GEIGER,
26  AND MARY GEIGER, Owners of
GEIGER PROPERTIES II, LLC;
27  RICHARD E. GRIFFARD and JOAN F.
GRIFFARD as Trustees of THE
28  RICHARD AND JOAN F. GRIFFARD

{00011532}                    4

CASE NO.                              COMPLAINT

1   FAMILY TRUST DTD SEPTEMBER
    14, 1992, AS AMENDED AND
2   RESTATED ON MARCH 9, 2016;
    PHILIP H. MILNER, JR. AND PAMELA
3   R. MILNER as CO-TRUSTEES OF THE
    MILNER FAMILY TRUST DATED
4   NOVEMBER 20, 2004; DI PENG AND
    JIAKUN ZHAO ; IRIS HAMI, IGAL
5   HAMI, and SIMA DJIJI as Trustees of
    TRIPLEX INVESTMENTS, LLC;
6   DAVID CHAIMOWITZ and PAT
    CHAIMOWITZ as Trustees of THE
7   CHAIMOWITZ FAMILY TRUST,
    DATED AUGUST 11, 2014; ROBERT
8   D. CLARK and KIMBERLY D.
    CHAPPELL as Trustees of THE LOTUS
9   VIRGINIA BUSINESS TRUST, LLC;
    ROELAND VAN KRIEKEN and
10  MARGARET VAN KRIEKEN as
    Trustees of the 2000 VAN KRIEKEN
11  FAMILY TRUST DATED JUNE 27,
    2000; DENNIS BENDER as Trustee of
12  THE WALTON-BENDER, LLC AND
    RICHMOND-BENDER, LLC; ANDY
13  WERKING AND RACHEL WERKING
    as Trustees of THE WERKING
14  REVOCABLE LIVING TRUST;
    JEFFREY LUBETKIN; LEO
15  DELANCEY ; DOUGLAS COLLINS;
    LEON J. TEICHNER; GREG DAHLKE
16  AND RACHEL DAHLKE, Members of
    2CANHOMES, LLC; NICHOLAS
17  OSSO, Owner of O&B REALTY CORP;
    ROBERT C. NORLING and KAREN D.
18  NORLING; MARK KIRCOS as Trustee
    of KIRCOS FAMILY REVOCABLE
19  INHERITENCE TRUST, DATED
    AUGUST 8, 2013; SERGIO LOPES and
20  DAWNMARIE LOPES,

21                          Plaintiffs,

22          v.

23  PATRICK NELSON, a resident of
    California; NELSON PARTNERS, LLC,
24  a Utah limited liability company;
    AXONIC CAPITAL, LLC, a Delaware
25  limited liability company; CLAYTON
    DEGIANCINTO, a resident of New
26  York; AXSPV LLC SERIES NB CRE
    LENDER, a Delaware limited liability
27  company; AXSPV LLC SERIES SBL
    CRE LENDER, a Delaware limited
28  liability company; AXSPV LLC SERIES

{00011532}                          5

                                    COMPLAINT
                              CASE NO.

| | |
|---|---|
| 1 | ACO CRE LENDER, a Delaware limited ) |
| 2 | liability company; BURGUNDY 523 )<br>OFFSHORE FUND, LTD., a Cayman ) |
| 3 | Island limited company; AXONIC )<br>SPECIAL OPPORTUNITIES SBL ) |
| 4 | MASTER FUND, LP, a Delaware limited )<br>partnership; AXONIC CREDIT ) |
| 5 | OPPORTUNITIES MASTER FUND, LP, )<br>a Cayman Islands, limited partnership; ) |
| 6 | and DOES 1 through 50, inclusive, ) |
| 7 | Defendants. ) |

CASE NO.

COMPLAINT

Plaintiffs allege:

## INTRODUCTION

1. This case has the earmarks of a *Ponzi* scheme with a slight twist. A *Ponzi* scheme is an investment fraud where money is taken from one group of investors to pay or benefit another set of investors to cover up the false promises made to all investors to perpetuate the fraud.

2. Plaintiffs are among 261 individuals, who collectively invested $75.5 million to buy interests in a student housing project in reliance on a series of false statements in the offering documents made by the sponsor of the offering and a financier that facilitated the offering. These misrepresentations went to the core of the very nature of the investment.

3. The sponsor is a real estate investment firm, claiming to specialize in acquiring and managing off-campus student housing projects. The sponsor sells interests in each project to a group of unrelated investors based on promises that the investment will provide monthly distributions, tax benefits, and the potential for capital appreciation. The sponsor profits from fees and commissions derived from the sale of the investments and fees received by its property management arm for managing the projects.

4. The offering documents promised that the money invested by Plaintiffs would be used by the trust **exclusively** to acquire the student housing project and pay associated acquisition costs. Instead, like a *Ponzi* scheme, the sponsor misappropriated the investor funds to pay for the next project that it would sell to another group of investors. This misappropriation prevented the sponsor from repaying bridge financing provided by the financier, directly contravening their representation that the bridge financing would be repaid from the offering before any other expenses were paid. This failure to repay the bridge financing ultimately gave the financier the ability to exercise rights provided to it by the sponsor that the sponsor and financier **concealed** from Plaintiffs and the other investors. Through

those concealed rights, the financier seized control of the trust and "sold" the project to an entity that it owned and controlled, erasing Plaintiffs' entire investment. Plaintiffs had no reason to believe that the financier had those concealed rights because such rights are unheard of for this type of investment and the offering documents represented that a failure to repay the bridge financing would ***only*** reduce the amount of the distributions promised to Plaintiffs.

5.     The misappropriation also rendered another promise in the offering documents false; namely, that the investment would qualify as a like-kind exchange under Internal Revenue Code Section 1031.  To qualify as a like-kind exchange, all of the money invested had to have been used to pay for the student housing project and acquisition costs.  The sponsor's misappropriation of the money Plaintiff invested made this promise false.

6.     The offering documents also promised monthly distributions of the net rental income from the student housing project.  But the distributions stopped in March 2020, which was a distribution for February 2020 rent.  While the sponsor blamed the COVID-19 crisis on the cessation of the distributions, the sponsor's former employees have reported that even before COVID-19 (1) the promised distributions were unrealistic and could not be achieved and (2) the sponsor routinely took rents from better performing projects to pay distributions for poorer performing projects to cover up the misrepresentations in the offering documents, which is also like a *Ponzi* scheme.

7.     In the end, the sponsor took $75.5 million from Plaintiffs and the other investors.  The financier now owns through an entity that it owns and controls the student housing project that is worth approximately $124 million.  And Plaintiffs are left with interests in a trust that has been stripped of its value, leaving Plaintiffs with nothing.  Plaintiffs, therefore, sue the sponsor, the financier and their respective affiliates to recover damages resulting from their fraud.

/////

CASE NO.

COMPLAINT

# OVERVIEW

8.      Plaintiffs, many of whom are senior citizens, are 122 of the investors in NP Skyloft, DST (the "Trust"), who have lost their entire investment in the Trust as a result of Defendants' fraud.  Patrick Nelson ("Nelson") and his firm, Nelson Partners, LLC ("Nelson Partners"), together with a New York-based hedge fund, Axonic Capital LLC ("Axonic") under the direction of financier Clayton DeGiacinto ("DeGiacinto"), enticed Plaintiffs to invest in the Trust through a series of misrepresentations and omissions of material facts about the true nature of the investment and the risks associated with it.

9.      Nelson Partners syndicates investments in student housing projects and manages those properties for its investors.  Nelson Partners represents that "[o]ur strategy is simple.  We try to understand what investors are looking for and what they value most; then find opportunities that best align with those goals.  It was this mindset that pointed us toward student housing."  Nelson Partners describes its syndicated investments as the "Optimal Investment Strategy" and represents that "Student housing provides appreciation potential, an inflation hedge, portfolio diversification, and monthly income with tax efficiency through depreciation anchored by student housing assets."

10.      Nelson Partners sponsored the offering of interests in the Trust and was the driving force behind it.  While the investments in the Trust were only offered to accredited investors, Nelson Partners targeted "smaller investors" for investments in what Nelson Partners claimed were "institutional-grade properties."  Nelson Partners structured the offering to allow individuals to reinvest into the Trust the proceeds they received from the sale of real estate.  Nelson Partners represented that an investment in the Trust would give Plaintiffs a beneficial ownership interest in the Trust's sole asset, a student housing project (the "Trust Property").  Through the represented structure, Plaintiffs could treat an investment in the Trust as a like-kind exchange under Internal Revenue Code Section 1031, allowing them to defer the

CASE NO.

COMPLAINT

payment of taxes on the gains realized from the sale properties by Plaintiffs before investing in the Trust.  As Nelson Partners touted on its website, "[a] Student Housing 1031 exchange allows you to defer paying taxes when you sell an investment property, by reinvesting the proceeds in a qualifying replacement student housing investment property under the Internal Revenue Code Section 1031."

11.    A key requirement for any Section 1031 exchange is that **all** the net proceeds from the sale of an investor's property must be used to pay for the replacement property — here, the student housing project — and directly related acquisition costs.  For this reason, the offering materials for the investment in the Trust detailed how the investors funds would be used.  And the offering materials represented that all investor funds would be used to purchase the Trust Property, pay costs associated with the purchase of the property, and pay commissions.  Unfortunately, for Plaintiffs, this representation and other representations in the offering materials were not true, leading to a series of events that caused Plaintiffs collectively to lose $34,833,207.11.

12.    Plaintiffs invested in the Trust based on Defendants' representations that: (1) The money invested by Plaintiffs would be used exclusively to pay for the purchase of the Trust Property and certain associated expenses and commissions; (2) Preferred Equity Providers (defined below) would be paid-off using the money invested by Plaintiffs before any other fees or expenses associated with the purchase of the Trust Property could be paid; (3) Plaintiffs only risked a reduction in "cash flow available to operate the Property and to pay distributions to the Investors" if the Preferred Equity Providers could not be repaid in full from the offering; and (4) Plaintiffs and the other investors would receive monthly distributions of all of the net cash from the operation of the Trust Property.  These representations were set forth in Confidential Private Placement Memorandum for NP Skyloft, DST, dated December 19, 2018 (the "PPM") and Supplement to PPM, dated March 2, 2019 (the "Supplement").  Tragically, these representations turned out to be false.

13.     Nelson Partners, the sponsor of the offering, raised $75.5 million from Plaintiffs and other investors through the sale of the interests in the Trust.  Plaintiffs collectively invested $34,833,207.11 million.  Plaintiffs are informed and believe and thereon allege that instead of using the investor funds to pay for the acquisition of the Trust Property as represented, Nelson Partners misappropriated a substantial portion of the money raised from the offering and did not apply Plaintiffs' funds as represented in the PPM and Supplement.

14.     As a result of the misappropriation, Nelson Partners and its affiliate, NP Skyloft JV, LLC ("JV LLC"), failed to repay the Preferred Equity Providers. Plaintiffs are informed and believe and thereon allege that notwithstanding the failure of the Nelson Partners and JV LLC to repay the Preferred Equity Providers, Nelson Partners paid to itself and its affiliates an estimated $6,522,800 in the following amounts:

$3,660,000 paid to Nelson Partners Property Management, Inc. ("NP-PM");

$2,280,000 paid to Nelson Partners;

$175,000 paid to Nelson Partners for its "internal legal staff"; and

$407,800 paid to Nelson Partners for "organizational and offering costs." The payment of such fees to itself and its affiliates directly contravened the representation made to Plaintiffs and the other investors that the Preferred Equity Providers would be paid-off ***before*** any other fees or expenses associated with the purchase of the Trust Property could be paid.

15.     The failure of Nelson Partners and JV LLC to repay the Preferred Equity Providers allowed Axonic through its affiliates to seize control of the Trust through rights given to the Preferred Equity Providers that Nelson Partners and Axonic deliberately concealed from Plaintiffs and the other investors.  After taking control of the Trust, Axonic sold the Trust Property to a related entity that it owned and controlled.  Nelson Partners gave Axonic the right to take control of the Trust and sell the Trust Property even though JV LLC — not the Trust — was obligated to

repay the Preferred Equity Providers.  Even worse, Axonic's sale of the Trust Property to itself did not eliminate or pay down the debt owed for the repayment of the Preferred Equity Providers even one cent.  All that the sale of the Trust Property accomplished was to wipe-out Plaintiffs' entire investment and transfer all the equity in the Trust Property and the stream of income provided by it to the entity owned and controlled by Axonic.

16.     Before Axonic sold the Trust Property to itself, Nelson Partners stopped paying distributions in March 2020.  While the payment of distributions may have been to cover-up the failure of Nelson Partners and JV LLC to repay the Preferred Equity Providers, Plaintiffs are informed and believe and thereon allege that Nelson Partners comingled funds of the various student housing projects syndicated and managed by it.  Plaintiffs are further informed and believe and thereon allege Nelson Partners and NP-PM failed to keep accurate accounting records for the operation of the student housing projects, including the Trust Property, owned by the 24 trusts syndicated and managed by Nelson Partners, making it difficult, if not impossible, to determine the proper amounts of the distributions that Plaintiffs are entitled to receive.  As a result of the comingling and inaccurate accounting records, Nelson Partners' representation that Plaintiffs and the other investors would receive all the available net cash from the operation of the Trust Property was false when made.

17.     As a result of the Defendants' misrepresentations, Plaintiffs have lost a total of $34,833,207.11 and have not received the income Defendants represented that they would receive.  Plaintiffs, therefore, bring this action to recover the damages caused by Defendants' fraud.

**PARTIES**

18.     Plaintiffs are:

a.     STEPHEN PULEO and MICHELLE PULEO BOUTIN were residents of the State of FLORIDA and were 68 and 70 years old at the time of

investment.  STEPHEN PULEO and MICHELLE PULEO BOUTIN, are trustees of the STEPHEN PULEO, JR. AND MICHELLE PULEO BOUTIN TRUST, which invested $25,000 in reliance on the representations in the PPM and the Supplement.

b.    LEE E. HUGHES and SUSAN G. HUGHES were residents of the State of CALIFORNIA and were 63 years old at the time of investment.  LEE E. HUGHES and SUSAN G. HUGHES are trustees of THE LOMA GATO TRUST DATED JULY 7, 2015, which invested $26,295.26 in reliance on the representations in the PPM and the Supplement.

c.    ARMEN E. PHELPS was a resident of the State of CALIFORNIA and was 63 years old at the time of investment.  ARMEN E. PHELPS is the trustee of THE ARMEN EDWARD PHELPS TRUST, which invested $27,000 in reliance on the representations in the PPM and the Supplement.

d.    DANIEL W. CHINN and JULIANA CHINN were residents of the State of CALIFORNIA and were 77 years old at the time of investment. DANIEL W. CHINN and JULIANA CHINN are trustees of THE CHINN FAMILY TRUST, which invested $38,545 in reliance on the representations in the PPM and the Supplement.

e.    DENNIS JOHN WOODRUFF was a resident of the State of CALIFORNIA and was 74 years old at the time of investment.  DENNIS JOHN WOODRUFF is the trustee of STRATA TRUST FBO DENNIS WOODRUFF, which invested $50,000 in reliance on the representations in the PPM and the Supplement.

f.    GEORGE SPICER was a resident of the State of OKLAHOMA and was 54 years old at the time of investment.  GEORGE SPICER invested $50,000 in reliance on the representations in the PPM and the Supplement.

g.    ARMAND MARK ESTRADA was a resident of the State of TEXAS and was 62 years old at the time of investment.  ARMAND MARK ESTRADA is the trustee of THE ESTRADA FAMILY TRUST DATED AUGUST

CASE NO.

COMPLAINT

30, 2018, which invested $50,000 in reliance on the representations in the PPM and the Supplement.

        h.      JAESHIN HA was a resident of the State of NEW JERSEY and was 72 years old at the time of investment.  JAESHIN HA, President of JAE YOUNG CORPORATION, invested $50,000 in reliance on the representations in the PPM and the Supplement.

        i.      CHRIS KINGDON and GAIL PEDERSON were residents of the State of COLORADO and were 64 and 60 years old at the time of investment. CHRIS KINGDON and GAIL PEDERSON are the trustees of THE PEDERSON KINGDON LIVING TRUST DATED DECEMBER 27, 2016, which invested $51,000 in reliance on the representations in the PPM and the Supplement.

        j.      DWAYNE H. MASEMER and ALICE B. MASEMER were residents of the State of FLORIDA and were 76 and 68 years old at the time of investment.  DWAYNE H. MASEMER and ALICE B. MASEMER invested $65,000 in reliance on the representations in the PPM and the Supplement.

        k.      TOMMY JOAQUIN HANCOCK and MARTHA AGNEW HANCOCK were residents of the State of TEXAS and were 58 and 62 years old at the time of investment.  TOMMY JOAQUIN HANCOCK and MARTHA AGNEW HANCOCK invested $66,800 in reliance on the representations in the PPM and the Supplement.

        l.      BARRY LAUFMAN and HELENE LAUFMAN were residents of the State of CALIFORNIA and were 66 and 65 years old at the time of investment.  BARRY LAUFMAN and HELENE LAUFMAN are trustees of THE BARRY AND HELENE LAUFMAN TRUST, which invested $75,000 in reliance on the representations in the PPM and the Supplement.

        m.      KENNETH S. STACEY was a resident of the Commonwealth of VIRGINIA and was 74 years old at the time of investment.  KENNETH S.

/////

CASE NO.

COMPLAINT

STACEY invested $95,000 in reliance on the representations in the PPM and the Supplement.

n.      JOHN NICHOLAS and KRISTIN GROSS were residents of the State of CALIFORNIA and were 59 and 50 years old at the time of investment. JOHN NICHOLAS and KRISTIN GROSS are trustees of THE JOHN NICHOLAS AND KRISTIN GROSS TRUST U/A/D APRIL 13, 2010, which invested $100,000 in reliance on the representations in the PPM and the Supplement.

o.      MICHAEL K. LAI and FANNY DEA LAI were residents of the State of CALIFORNIA and were 57 and 56 years old at the time of investment. MICHAEL K. LAI and FANNY DEA LAI invested $100,000 in reliance on the representations in the PPM and the Supplement.

p.      NORIKO H. BARNES and CHRISTOPHER D. BARNES were residents of the State of CALIFORNIA and were 48 and 46 years old at the time of investment. NORIKO H. BARNES and CHRISTOPHER D. BARNES invested $100,000 in reliance on the representations in the PPM and the Supplement.

q.      FRANK CARPI was a resident of the State of NEW JERSEY and was 84 years old at the time of investment. FRANK CARPI invested $100,000 in reliance on the representations in the PPM and the Supplement.

r.      CARL JOHN KUGLER III was a resident of the State of COLORADO and was 57 years old at the time of investment. CARL JOHN KUGLER III invested $100,000 in reliance on the representations in the PPM and the Supplement.

s.      FRED TOMPKIN was a resident of the State of ILLINOIS and was 52 years old at the time of investment. FRED TOMPKIN, owner of TOMPKIN INVESTMENTS, INC., invested $100,000 in reliance on the representations in the PPM and the Supplement.

t.      KRYSTAL PESCATORE was a resident of the State of FLORIDA and was 51 years old at the time of investment. KRYSTAL

COMPLAINT
CASE NO.

PESCATORE, owner of RKP EQUITIES LLC, A NEW YORK LLC OPERATING IN FLORIDA, invested $100,000 in reliance on the representations in the PPM and the Supplement.

u.    STEVEN DENTE and DENISE DENTE were residents of the State of CALIFORNIA and were 67 and 52 years old at the time of investment. STEVEN DENTE and DENISE DENTE invested $100,000 in reliance on the representations in the PPM and the Supplement.

v.    AMBER D. GOFUS and RUSSELL J. GOFUS were residents of the State of PENSYLVANIA and were 55 years old at the time of investment. AMBER D. GOFUS and RUSSELL J. GOFUS invested $100,000 in reliance on the representations in the PPM and the Supplement.

w.    NILS GUNTHER and KATHRYN GUNTHER were residents of the State of WASHINGTON and were 67 and 68 years old at the time of investment. NILS GUNTHER and KATHRYN GUNTHER invested $100,000 in reliance on the representations in the PPM and the Supplement.

x.    FARID A. MASOUD was a resident of the State of CALIFORNIA and was 39 years old at the time of investment. FARID A. MASOUD invested $100,000 in reliance on the representations in the PPM and the Supplement.

y.    DENNIS E. MOELLER was a resident of the State of NEW JERSEY and was 77 years old at the time of investment. DENNIS E. MOELLER is the trustee of THE DENNIS E. MOELLER LIVING TRUST DATED MARCH 15, 2006, which invested $100,000 in reliance on the representations in the PPM and the Supplement.

z.    DONGSHENG XING and SHUQIN FENG were residents of the State of CALIFORNIA and were 58 years old at the time of investment. DONGSHENG XING and SHUQIN FENG are the trustees of the DONGSHENG

/////

XING & SHUQIN FENG FAMILY TRUST, which invested $100,000 in reliance on the representations in the PPM and the Supplement.

aa.    PAUL E. LARSON was a resident of the State of CALIFORNIA and was 66 years old at the time of investment. PAUL E. LARSON invested $104,000 in reliance on the representations in the PPM and the Supplement.

bb.    FORREST B. ALLEN and KATHY ALLEN were residents of the State of CALIFORNIA and were 70 and 66 years old at the time of investment. FORREST B. ALLEN and KATHY ALLEN are trustees of THE F. AND K. ALLEN FAMILY TRUST OF 1998, which invested $104,262 in reliance on the representations in the PPM and the Supplement.

cc.    RICHARD HODGE, and MARY HODGE were residents of the State of COLORADO and were 75 and 73 years old at the time of investment. RICHARD HODGE and MARY HODGE are the OWNERS OF THE LOYD HODGE & SONS, INC. CORPORATION, which invested $110,000 in reliance on the representations in the PPM and the Supplement.

dd.    ROBERT CANTERBURY was a resident of the State of LOUISIANA and was 54 years old at the time of investment. ROBERT CANTERBURY, owner of CANTERBURY ENTERPRISES, LLC, invested $110,506.38 in reliance on the representations in the PPM and the Supplement.

ee.    GERALD H. DUBIN was a resident of the State of TEXAS and was 74 years old at the time of investment. GERALD H. DUBIN, owner of GHD PROPERTIES, LLC, invested $111,252.68 in reliance on the representations in the PPM and the Supplement.

ff.    SUNJAY DAWAR was a resident of the State of KANSAS and was 51 years old at the time of investment. SUNJAY DAWAR, owner of OSR PROPERTIES, LLC, invested $111,547.06 in reliance on the representations in the PPM and the Supplement.

/////

CASE NO.

COMPLAINT

gg.     JACQUELINE ROBIN was a resident of the State of MONTANA and was 56 years old at the time of investment.  JACQUELINE ROBIN, owner of HUNGRY MOOSE BUILDING PARTNERS, LLC, invested $115,000 in reliance on the representations in the PPM and the Supplement.

hh.     CHARLES KO and SUSANA WU were residents of the State of CALIFORNIA and were 45 and 47 years old at the time of investment.  CHARLES KO and SUSANA WU invested $119,000 in reliance on the representations in the PPM and the Supplement.

ii.     KASSIM JAHANGIR MUGHAL was a resident of the State of NEW JERSEY and was 32 years old at the time of investment.  KASSIM JAHANGIR MUGHAL invested $124,800.55 in reliance on the representations in the PPM and the Supplement.

jj.     RICK SCHILLINGER was a resident of the State of CALIFORNIA and was 71 years old at the time of investment.  RICK SCHILLINGER invested $125,000 in reliance on the representations in the PPM and the Supplement.

kk.     DANIEL LOREDO was a resident of the State of FLORIDA and was 54 years old at the time of investment.  DANIEL LOREDO invested $126,500 in reliance on the representations in the PPM and the Supplement.

ll.     KENNETH K. LEE was a resident of the State of CALIFORNIA and was 85 years old at the time of investment.  KENNETH K. LEE is the trustee of THE LEE LIVING TRUST, which invested $130,675 in reliance on the representations in the PPM and the Supplement.

mm.   LEQIN SHI was a resident of the Commonwealth of VIRGINIA and was 60 years old at the time of investment.  LEQIN SHI invested $133,618.92 in reliance on the representations in the PPM and the Supplement.

nn.     LAWRENCE SILVER was a resident of the State of NEW YORK and was 68 years old at the time of investment.  LAWRENCE SILVER

invested $140,000 in reliance on the representations in the PPM and the Supplement.

        oo.    EDWARD ROSS was a resident of the State of CALIFORNIA and was 54 years old at the time of investment. EDWARD ROSS is the trustee of THE EDWARD ERICH ROSS REVOCABLE LIVING TRUST, which invested $142,212.37 in reliance on the representations in the PPM and the Supplement.

        pp.    HADIA FINLEY was a resident of the State of CALIFORNIA and was 72 years old at the time of investment. HADIA FINLEY is the trustee of THE HADIA MARIANNE FINLEY LIVING TRUST, which invested $150,000 in reliance on the representations in the PPM and the Supplement.

        qq.    YAOYAO FU was a resident of the State of CALIFORNIA and was 33 years old at the time of investment. YAOYAO FU is the trustee of THE YAOYAO FU LIVING TRUST, which invested $150,000 in reliance on the representations in the PPM and the Supplement.

        rr.    JING WANG AND CHENSHENG WANG were residents of the State of CALIFORNIA and were 31 years old at the time of investment. JING WANG AND CHENSHENG WANG invested $150,000 in reliance on the representations in the PPM and the Supplement.

        ss.    RAYMOND GOULD and SANDRA GOULD were residents of the State of CALIFORNIA and were 80 and 75 years old at the time of investment. RAYMOND GOULD and SANDRA GOULD are trustees of THE GOULD FAMILY TRUST, which invested $150,000 in reliance on the representations in the PPM and the Supplement.

        tt.    ASHIT JAIN and RENU JAIN were residents of the State of CALIFORNIA and were 46 and 44 years old at the time of investment. ASHIT JAIN and RENU JAIN are the trustees of THE ASHIT K. JAIN AND RENU JAIN REVOCABLE LIVING TRUST DATED DECEMBER 6, 2013, which invested $150,000 in reliance on the representations in the PPM and the Supplement.

COMPLAINT
CASE NO.

uu.    ABDUL S. MASOUD and HABIBA MASOUD were residents of the State of CALIFORNIA and were 70 and 66 years old at the time of investment.  ABDUL S. MASOUD and HABIBA MASOUD are the trustees of THE MASOUD FAMILY TRUST, which invested $150,000 in reliance on the representations in the PPM and the Supplement.

vv.    PETER J. MAINGUY was a resident of the State of FLORIDA and was 67 years old at the time of investment.  PETER J. MAINGUY invested $167,685.47 in reliance on the representations in the PPM and the Supplement.

ww.    JUDITH MCCLINTIC was a resident of the State of CALIFORNIA and was 75 years old at the time of investment.  JUDITH MCCLINTIC is the trustee of THE JUDITH PEEPLES MCCLINTIC RESIDUARY TRUST, which invested $175,000 in reliance on the representations in the PPM and the Supplement.

xx.    ETHAN MORRIS was a resident of the Commonwealth of VIRGINIA and was 48 years old at the time of investment.  ETHAN MORRIS, owner of PWEVC, LLC. invested $180,000 in reliance on the representations in the PPM and the Supplement.

yy.    EMILE KISHEK and TAGHREED KISHEK were residents of the State of CALIFORNIA and were 68 and 58 years old at the time of investment.  EMILE KISHEK and TAGHREED KISHEK are trustees of THE KISHEK FAMILY TRUST, which invested $181,000 in reliance on the representations in the PPM and the Supplement.

zz.    JAROMIR HOLAN was a resident of the State of CALIFORNIA at the time of investment.  JAROMIR HOLAN invested $185,837 in reliance on the representations in the PPM and the Supplement.

aaa.    KANMAN F. WONG was a resident of the State of CALIFORNIA and was 62 years old at the time of investment.  KANMAN F. WONG is the trustee of THE TESTAMENTARY TRUST OF KENNETH WONG,

COMPLAINT
CASE NO.

which invested $199,792.95 in reliance on the representations in the PPM and the Supplement.

bbb.    ROBERT F. WALFORD and BEVERLY J. WALFORD were residents of the State of NORTH DAKOTA and were 70 years old at the time of investment.  ROBERT F. WALFORD and BEVERLY J. WALFORD are trustees for LIFE ESTATE, STEVEN M. WALFORD AND BRIAN R. WALFORD REMAINDERMEN, which invested $200,000 in reliance on the representations in the PPM and the Supplement.

ccc.    ANTONIO LOPES and MARIA LOPES were residents of the State of NEW JERSEY and were 59 and 58 years old at the time of investment. ANTONIO LOPES and MARIA LOPES invested $200,000 in reliance on the representations in the PPM and the Supplement.

ddd.    SAMUEL HEIMAN and CATHERINE HEIMAN were residents of the State of MISSOURI and were 57 and 54 years old at the time of investment. SAMUEL HEIMAN and CATHERINE HEIMAN are trustees, or their successors in trust, under THE HEIMAN LIVING TRUST, which invested $200,000 in reliance on the representations in the PPM and the Supplement.

eee.    CARLOS PRADO LYON was a resident of the State of FLORIDA and was 78 years old at the time of investment.  CARLOS PRADO LYON invested $200,000 in reliance on the representations in the PPM and the Supplement.

fff.    FRANK TENTEROMANO was a resident of the State of FLORIDA and was 70 years old at the time of investment.  FRANK TENTEROMANO is the trustee of THE FRANK TENTEROMANO REVOCABLE TRUST, which invested $200,000 in reliance on the representations in the PPM and the Supplement.

ggg.    DOUGLAS C. EDMAN was a resident of the State of GEORGIA and was 56 years old at the time of investment.  DOUGLAS C. EDMAN

1    is the trustee of THE DOUGLAS C. EDMAN REVOCABLE TRUST, which

2    invested $200,000 in reliance on the representations in the PPM and the

3    Supplement.

4            hhh.   HENRY H. BREWSTER, JR. and BARBARA WHITE

5    BREWSTER were residents of the State of ALABAMA and were 66 and 61 years

6    old at the time of investment.  HENRY H. BREWSTER, JR. and BARBARA

7    WHITE BREWSTER invested $200,000 in reliance on the representations in the

8    PPM and the Supplement.

9            iii.   BRIAN BARNETT was a resident of the State of UTAH and

10   was 58 years old at the time of investment.  BRIAN BARNETT invested

11   $201,158.75 in reliance on the representations in the PPM and the Supplement.

12           jjj.   MICHAEL RUBLE and VIRGINIA RUBLE were residents of

13   the State of CALIFORNIA and were 57 and 55 years old at the time of investment.

14   MICHAEL RUBLE and VIRGINIA RUBLE are the trustees of THE MICHAEL &

15   VIRGINIA RUBLE FAMILY TRUST OF 2008, which invested $212,000 in

16   reliance on the representations in the PPM and the Supplement.

17           kkk.   MITCHELL R. CHWATT was a resident of the State of NEW

18   JERSEY and was 64 years old at the time of investment.  MITCHELL R. CHWATT

19   invested $247,500 in reliance on the representations in the PPM and the

20   Supplement.

21           lll.   STEVE PARKER and JILL PARKER were residents of the State

22   of NEW JERSEY and were 71 and 70 years old at the time of investment.  STEVE

23   PARKER and JILL PARKER, owners of SHPARK, LLC, invested $250,000 in

24   reliance on the representations in the PPM and the Supplement.

25           mmm.      SCOTT A. CLARK and PATRICIA CLARK were

26   residents of the State of Massachusetts at the time of investment.  SCOTT A.

27   CLARK and PATRICIA CLARK invested $250,000 in reliance on the

28   representations in the PPM and the Supplement.

nnn.   JANE LEE was a resident of the State of CALIFORNIA and was 28 years old at the time of investment.  JANE LEE is the trustee of THE JANE LEE 2018 TRUST, which invested $286,875 in reliance on the representations in the PPM and the Supplement.

ooo.   DAVID J. GRANT and LOIS D. SCHULTZ-GRANT were residents of the State of CALIFORNIA and were 76 and 65 years old at the time of investment.  DAVID J. GRANT and LOIS D. SCHULTZ-GRANT invested $290,016.70 in reliance on the representations in the PPM and the Supplement.

ppp.   RUSSELL LAWSON was a resident of the State of NEW HAMPSHIRE and was 72 years old at the time of investment.  RUSSELL LAWSON is the trustee of THE LAWSON FAMILY TRUST, which invested $300,000 in reliance on the representations in the PPM and the Supplement.

qqq.   LAURA BEHRENS was a resident of the State of CALIFORNIA and was 53 years old at the time of investment.  LAURA BEHRENS invested $300,000 in reliance on the representations in the PPM and the Supplement.

rrr.   JAMES J. MCELROY and JULIEANN H. MCELROY were residents of the State of WASHINGTON and were 77 and 76 years old at the time of investment.  JAMES J. MCELROY and JULIEANN H. MCELROY are Co-equal Managers of PENNY CREEK, LLC, A WASHINGTON STATE LIMITED LIABILITY COMPANY, which invested $309,000 in reliance on the representations in the PPM and the Supplement.

sss.   GERALD WALDMAN was a resident of the State of FLORIDA and was 75 years old at the time of investment.  GERALD WALDMAN, owner of BROOKLAND SQUARE, LLC, invested $320,000 in reliance on the representations in the PPM and the Supplement.

ttt.   WILLIAM RENDAHL was a resident of the State of CALIFORNIA and was 79 years old at the time of investment.  WILLIAM

RENDAHL is the trustee of THE BARBARA C. RENDAHL EXEMPTION TRUST, established under the WILLIAM B. AND BARBARA C. RENDAHL FAMILY TRUST, which invested $389,760.26 in reliance on the representations in the PPM and the Supplement.

uuu.    MICHELE GERSON was a resident of the State of CALIFORNIA and was 59 years old at the time of investment.  MICHELE GERSON is the trustee of THE GERSON FAMILY TRUST, which invested $400,000 in reliance on the representations in the PPM and the Supplement.

vvv.    WILLIAM K. HEIDEN and CRISTINA S. HEIDEN were residents of the State of MASSACHUSETTS and were 59 and 63 years old at the time of investment.  WILLIAM K. HEIDEN and CRISTINA S. HEIDEN invested $400,000 in reliance on the representations in the PPM and the Supplement.

www. CALVIN ROY KNIGHTS was a resident of the State of NEW HAMPSHIRE and was 70 years old at the time of investment.  CALVIN ROY KNIGHTS is the trustee of THE KNIGHTS FAMILY TRUST, which invested $400,000 in reliance on the representations in the PPM and the Supplement.

xxx.    MARK D. BIRNBAUM was a resident of the State of NEW YORK and was 67 years old at the time of investment.  MARK D. BIRNBAUM, President of DELAJON REALTY CORP., invested $412,535.65 in reliance on the representations in the PPM and the Supplement.

yyy.    JESS E. BENTON and ANN M. BENTON were residents of the State of CALIFORNIA and were 79 and 75 years old at the time of investment. JESS E. BENTON and ANN M. BENTON are trustees of THE BENTON FAMILY 1996 TRUST, which invested $425,000 in reliance on the representations in the PPM and the Supplement.

zzz.    PAUL TOOGOOD was a resident of the State of CALIFORNIA and was 68 years old at the time of investment.  PAUL TOOGOOD, owner of
/////

COMPLAINT
CASE NO.

TOOGOOD VINEYARDS, LLC, invested $450,000 in reliance on the representations in the PPM and the Supplement.

aaaa. PHILIP CIRRONE was a resident of the State of NEW YORK and was 59 years old at the time of investment. PHILIP CIRRONE, owner of LISA'S REAL ESTATE STUFF, LLC invested $450,000 in reliance on the representations in the PPM and the Supplement.

bbbb. DEBRA A. MAGIER was a resident of the State of MASSACHUSETTS and was 54 years old at the time of investment. DEBRA A. MAGIER invested $455,453.83 in reliance on the representations in the PPM and the Supplement.

cccc. ELLIOT SILVERSTONE was a resident of the State of TEXAS and was 74 years old at the time of investment. ELLIOT SILVERSTONE, owner of CAR WASH ONE, LLC, invested $479,728 in reliance on the representations in the PPM and the Supplement.

dddd. SCOTT GLEN KIMBALL was a resident of the State of IDAHO and was 67 years old at the time of investment. SCOTT GLEN KIMBALL invested $498,411 in reliance on the representations in the PPM and the Supplement.

eeee. PHILIP W. JOHNSON RLT was a resident of the State of NEVADA and was 77 years old at the time of investment. PHILIP W. JOHNSON RLT invested $550,000 in reliance on the representations in the PPM and the Supplement.

ffff. RONALD A. DINNOCENTI was a resident of the Commonwealth of PENNSYLVANIA and was 82 years old at the time of investment. RONALD A. DINNOCENTI invested $600,000 in reliance on the representations in the PPM and the Supplement.

gggg. RONALD A. DINNOCENTI was a resident of the Commonwealth of PENNSYLVANIA and was 82 years old at the time of investment. RONALD A. DINNOCENTI, Managing Partner, D&L Associates, L.P.

invested $650,000 in reliance on the representations in the PPM and the Supplement.

hhhh. STEVE ULENE was a resident of the State of HAWAII and was 52 years old at the time of investment.  STEVE ULENE, member of GOSUM, LLC, invested $668,200 in reliance on the representations in the PPM and the Supplement.

iiii. HEIDE FEINGOLD and ADAM FEINGOLD were residents of the State of ARIZONA and were 57 years old at the time of investment.  HEIDE FEINGOLD and ADAM FEINGOLD were the trustees of THE KEVLAR FAMILY LIMITED PARTNERSHIP invested $675,000 in reliance on the representations in the PPM and the Supplement.

jjjj. STEVEN NINCHUN SHENG AND ROUNDA SHENG were residents of the State of CALIFORNIA and were 73 and 67 years old at the time of investment.  STEVE SHENG AND ROUNDA SHENG are trustees of THE SHENG TRUST CREATED FEBRUARY 13, 2002, which invested $700,000 in reliance on the representations in the PPM and the Supplement.

kkkk. RICHARD M. DELUNA and MATILDE F. DELUNA were residents of the State of CALIFORNIA and were 80 years old at the time of investment.  RICHARD M. DELUNA and MATILDE F. DELUNA are trustees of THE DELUNA FAMILY TRUST UNDER AGREEMENT DATED SEPTEMBER 4, 1996, which invested $700,000 in reliance on the representations in the PPM and the Supplement.

llll. JOANNE D. SCHOTT was a resident of the State of CALIFORNIA and was 82 years old at the time of investment.  JOANNE D. SCHOTT is the trustee of THE SURVIVOR'S TRUST CREATED UNDER THE E. LAURENCE SCHOTT AND JOANNE D. SCHOTT TRUST DATED SEPTEMBER 3, 1996 AS AMENDED AND RESTATED, which invested $723,514.34 in reliance on the representations in the PPM and the Supplement.

mmmm.    WILLIAM E. SMITH was a resident of the State of COLORADO and was 66 years old at the time of investment.  BILL SMITH invested $800,000 in reliance on the representations in the PPM and the Supplement.

nnnn. LITA WEST was a resident of the State of OREGON and was 72 years old at the time of investment.  LITA WEST is the trustee of THE LITA WALKER WEST LIVING TRUST 2017, which invested $800,000 in reliance on the representations in the PPM and the Supplement.

oooo. LAKE POINTE HOTEL COMPANY, LLC invested $875,000 in reliance on the representations in the PPM and the Supplement.

pppp. CHEYENNE MOUNTAIN HOTEL FI. LLC invested $937,500 in reliance on the representations in the PPM and the Supplement.

qqqq. BRANSON HOTEL CORPORATION invested $937,500 in reliance on the representations in the PPM and the Supplement.

rrrr.    INTERQUEST HOTEL PARTNERS, LLC invested $937,500 in reliance on the representations in the PPM and the Supplement.

ssss.    WILLIAM CRAIG AND GWENDOLYN CRAIG were residents of the State of TEXAS and were 59 and 61 years old at the time of investment.  WILLIAM CRAIG AND GWENDOLYN CRAIG, owners of RAYFORD CROSSING, LTD, A TEXAS LIMITED PARTNERSHIP, invested $1,000,000 in reliance on the representations in the PPM and the Supplement.

tttt.    STEVEN BRINSON was a resident of the State of LOUISIANA and was 54 years old at the time of investment.  STEVEN BRINSON, owner of BRINSON REALTY, LLC, invested $1,000,000 in reliance on the representations in the PPM and the Supplement.

uuuu. MARTIN B. SNOW was a resident of the State of ILLINOIS and was 73 years old at the time of investment.  MARTIN B. SNOW was the co-trustee of THE BONNIE BOLDING SWEARINGEN TRUST, which invested

$1,000,000 in reliance on the representations in the PPM and the Supplement.

vvvv. JIM TAKIS, BRUCE FRANKLIN, TOM GEIGER, and MARY GEIGER were residents of the State of CALIFORNIA and were 58, 55, 59 and 60 years old at the time of investment.  JIM TAKIS, BRUCE FRANKLIN, TOM GEIGER, and MARY GEIGER, owners of GEIGER PROPERTIES II, LLC invested $1,010,000 in reliance on the representations in the PPM and the Supplement.

wwww.      RICHARD E. GRIFFARD and JOAN F. GRIFFARD were residents of the State of MISSOURI and were 69 and 67 years old at the time of investment.  RICHARD E. GRIFFARD and JOAN F. GRIFFARD are the trustees of THE RICHARD AND JOAN F. GRIFFARD FAMILY TRUST DTD SEPTEMBER 14, 1992, AS AMENDED AND RESTATED ON MARCH 9, 2016, which invested $107,000 in reliance on the representations in the PPM and the Supplement.

xxxx. PHILIP H. MINER and PAMELA R. MILNER were residents of the State of CALIFORNIA and were 68 and 64 years old at the time of investment. PHILIP H. MILNER and PAMELA R. MILNER are trustees of THE MILNER FAMILY TRUST DATED NOVEMBER 20, 2004; PHILIP H. MILNER, JR. AND PAMELA R. MILNER, CO-TRUSTEES OF THE MILNER FAMILY TRUST DATED NOVEMBER 20, 2004, which invested $128,088.61 in reliance on the representations in the PPM and the Supplement.

yyyy. DI PENG AND JIAKUN ZHAO were residents of the State of CALIFORNIA and were 30 years old at the time of investment. DI PENG AND JIAKUN ZHAO invested $150,000 in reliance on the representations in the PPM and the Supplement.

zzzz.  IRIS HAMI, IGAL HAMI and SIMA DJIJI were residents of the Commonwealth of PENNSYLVANIA and were 65, 74 and 92 years old at the time of investment.  IRIS HAMI, IGAL HAMI and SIMA DJIJI, owners of TRIPLEX

INVESTMENTS, LLC, invested $385,000 in reliance on the representations in the PPM and the Supplement.

aaaaa. DAVID CHAIMOWITZ and PAT CHAIMOWITZ were residents of the State of CALIFORNIA and were 63 and 64 years old at the time of investment. DAVID CHAIMOWITZ and PAT CHAIMOWITZ are the trustees of THE CHAIMOWITZ FAMILY TRUST DATED AUGUST 11, 2014, which invested $491,300 in reliance on the representations in the PPM and the Supplement.

bbbbb. ROBERT D. CLARK and KIMBERLY D. CHAPPELL were residents of the Commonwealth of VIRGINIA and were 66 and 55 years old at the time of investment. ROBERT D. CLARK and KIMBERLY D. CHAPPELL are trustees of THE LOTUS VIRGINIA BUSINESS TRUST, LLC, which invested $50,128.53 in reliance on the representations in the PPM and the Supplement.

ccccc. ROELAND VAN KRIEKEN and MARGARET VAN KRIEKEN were residents of the State of CALIFORNIA and were 59 and 58 years old at the time of investment. ROELAND VAN KRIEKEN and MARGARET VAN KRIEKEN are trustees of the 2000 VAN KRIEKEN FAMILY TRUST DATED JUNE 27, 2000, which invested $500,000 in reliance on the representations in the PPM and the Supplement.

ddddd. DENNIS BENDER was a resident of the State of VERMONT and was 77 years old at the time of investment. DENNIS BENDER is the trustee of THE WALTON-BENDER, LLC AND RICHMOND-BENDER, LLC, which invested $919,000 in reliance on the representations in the PPM and the Supplement.

eeeee. ANDY WERKING and RACHEL WERKING were residents of the State of CALIFORNIA and were 57 and 61 years old at the time of investment. ANDY WERKING and RACHEL WERKING are the trustees of THE WERKING REVOCABLE LIVING TRUST, which invested $450,826 in reliance on the

representations in the PPM and the Supplement.

fffff.    JEFFREY LUBETKIN was a resident of the State of CALIFORNIA and was 65 years old at the time of investment.  JEFFREY LUBETKIN is the trustee of THE JEFF LUBETKIN TRUST, which invested $100,000 in reliance on the representations in the PPM and the Supplement.

ggggg.    LEO DELANCEY was a resident of the State of CALIFORNIA and was 64 years old at the time of investment.  LEO DELANCEY invested $220,765 in reliance on the representations in the PPM and the Supplement.

hhhhh.    DOUGLAS COLLINS was a resident of the State of CALIFORNIA and was 65 years old at the time of investment.  DOUGLAS COLLINS invested $525,237.10 in reliance on the representations in the PPM and the Supplement.

iiiii.    LEON J. TEICHNER was a resident of the State of GEORGIA and was 69 years old at the time of investment.  LEON J. TEICHNER invested $53,125.00 in reliance on the representations in the PPM and the Supplement.

jjjjj.    GREG DAHLKE AND RACHEL DAHLKE were residents of the State of COLORADO and were 45 and 58 years old at the time of investment.  GREG DAHLKE AND RACHEL DAHLKE, members of 2CANHOMES, LLC, invested $50,000.00 in reliance on the representations in the PPM and the Supplement.

kkkkk.    NICHOLAS OSSO was a resident of the State of NEW YORK and was 63 years old at the time of investment.  NICHOLAS OSSO, owner of O&B REALTY CORP, invested $450,000 in reliance on the representations in the PPM and the Supplement.

lllll.    ROBERT C. NORLING AND KAREN D. NORLING were residents of the State of CALIFORNIA and were 70 years old at the time of investment.  ROBERT C. NORLING AND KAREN D. NORLING invested

$125,000 in reliance on the representations in the PPM and the Supplement.

　　　　　mmmmm.   MARC KIRCOS was a resident of the State of CALIFORNIA and was 65 years old at the time of investment.  MARC KIRCOS is the trustee of KIRCOS FAMILY REVOCABLE INHERITENCE TRUST, DATED AUGUST 8, 2013, which invested $50,000 in reliance on the representations in the PPM and the Supplement.

　　　　　nnnnn.   　SERGIO LOPES AND DAWNMARIE LOPES were residents of the State of NEW JERSY and were 46 and 47 years old at the time of investment.  SERGIO LOPES AND DAWNMARIE LOPES invested $100,000 in reliance on the representations in the PPM and the Supplement.

19.   Defendant Patrick Nelson is a resident of Orange County, California. Nelson is the sole owner, manager, president, and chief executive officer of Nelson Partners.

20.   Defendant Nelson Partners, LLC is a limited liability company organized under the laws of the State of Utah with its principal place of business in Orange County, California.  Nelson Partners sponsored the offering of the interests in the Trust.  As the sponsor of the offering of the interests, Nelson Partners formed the Trust and the affiliated entities, and was responsible for the content of the PPM and the Supplement.

21.   Defendant Axonic Capital LLC is a Delaware limited liability company and is an investment advisor and/or hedge fund or hedge fund manager.

22.   Defendant Clayton DeGiacinto is a resident of the state of New York. DeGiacinto is the Managing Member and Chief Investment Officer of Axonic.

23.   Defendants AxSPV LLC Series NB CRE Lender, AxSPV LLC Series SBL CRE Lender, and AxSPV LLC Series ACO CRE Lender are Delaware limited liability companies and are funds affiliated with, and controlled by, Axonic. Defendant Burgundy 523 Offshore Fund, Ltd. ("Burgundy") is a Cayman Island limited company and is the successor in interest to AxSPV LLC Series NB CRE

Lender.  Plaintiffs are informed and believe and thereon allege that Axonic and DeGiacinto manage and control Burgundy.  Defendant Axonic Special Opportunities SBL Master Fund, LP is a Delaware limited partnership and is the successor in interest to AxSPV LLC Series SBL CRE Lender.  Plaintiffs are informed and believe and thereon allege that Axonic and DeGiacinto manage and control Axonic Special Opportunities SBL Master Fund, LP.  Defendant Axonic Credit Opportunities Master Fund, LP ("Master Fund") is a Cayman Island limited partnership and is the successor in interest to AxSPV LLC Series ACO CRE Lender.  AxSPV LLC Series NB CRE Lender, AxSPV LLC Series SBL CRE Lender, AxSPV LLC Series ACO CRE Lender, Burgundy, Axonic Special Opportunities SBL Master Fund, LP, and Master Fund are referred to collectively as the "Preferred Equity Providers."

## JURISDICTION AND VENUE

24.    Jurisdiction is conferred by §27 of the Securities Exchange Act of 1934 (the "Exchange Act").  The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated under §10 of the Exchange Act.   In addition, because this is a civil action arising under the laws of the United States, the Court has jurisdiction pursuant to 28 U.S.C. §1331.

25.    Venue in this district is proper pursuant to §27 of the Exchange Act. Many of the false or misleading statements were made in or issued from this district.

26.    The Nelson Partners' principal place of business is located in Orange County, California, and Defendant Nelson resides in Orange County, California. Certain of the acts and conduct complained of herein, including the dissemination of materially false and misleading statements to the Investors, occurred in this district.

27.    In connection with the acts and conduct alleged in this complaint, Defendants, either directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate wire and telephone communications.

CASE NO.

COMPLAINT

**BACKGROUND**

28.    Nelson Partners represents that it "is a nationally recognized real estate investment firm specializing in developing, acquiring and managing high quality purpose-built off-campus student housing properties throughout the U.S." Nelson and Nelson Partners claim that they have practical knowledge and understanding of Section 1031 strategies. Such knowledge and experience, according to Nelson and Nelson Partners, allows Nelson Partners to put "together 1031-eligible investments in real estate, which would "[e]nable smaller investors to own institutional-grade properties."

29.    Nelson Partners sponsored the offering of interests in the Trust. As the sponsor, Nelson Partners identified and acquired the Trust Property, took the lead in preparing the PPM and the Supplement, and was responsible for the administration of the investor funds received from the offering.

30.    The PPM represented to Plaintiffs that "[t]he investment objectives of the Trust are to acquire and manage the [Trust] Property to generate income with tax benefits, preserve principal and provide the potential for long-term growth." The PPM projected that in years 1 and 2 of Plaintiffs' investment, the Trust would pay a 6.13% return to them which it projected would increase to 7.00% in years 9 and 10. The PPM further disclosed that the Trust ultimately would sell the Trust Property and return to the Investors their investments and their proportionate share of the Trust Property's appreciation.

31.    The tax benefits offered by the investment in the Trust included the deferral of the payment of taxes on the sale of property under Internal Revenue Code Section 1031. Tracing its roots back to Revenue Act of 1921, Section 1031 allows a taxpayer to postpone the payment of income taxes on gains derived from the sale of real estate through a like-kind exchange if certain conditions are met.

32.    A like-kind exchange involves the sale of the taxpayer's initial property, referred to as the "Relinquished Property," and the acquisition of the new

property, referred to as the "Replacement Property." Among the requirements to qualify as a like-kind exchange under Section 1031 is that the proceeds from the sale of the Relinquished Property can be used *only* to buy Replacement Property, pay closing costs or pay off a mortgage or deed of trust covering the Relinquished Property. If the funds are used for any other purpose, the Internal Revenue Service may disqualify the transaction as a like-kind exchange under Section 1031, which would expose the taxpayer to additional tax liability, interest and penalties.

33.     The PPM and Supplement are filled with representations that the investment was structured to comply with Section 1031 and that "an Investor's acquisition of an Interest 'should' be treated as a direct acquisition of an interest in the Property for purposes of Section 1031." The PPM and Supplement cautioned that each investors' "own particular circumstances" — such as, whether the Relinquished Property qualifies and whether the timing requirements are met — ultimately would determine whether the IRS would allow the purchase of an Interest to be treated as like-kind exchange. But for its part, Nelson Partners represented that "the acquisition of an Interest by an Investor should be treated as the direct acquisition of the Property by the Investor for purposes of Section 1031." The PPM further represented that the Trust Agreement between the Trust, the trustee and the investors included provisions "[t]o protect the tax-free exchange status for the Investors under Section 1031."

**REPRESENTATIONS ABOUT USE OF INVESTOR FUNDS**

34.     The PPM represented that "[t]he Offering Proceeds will be used to cover the reimbursement of closing, financing, and acquisition costs that the Trust or the Sponsor incurred in connection with the acquisition of the Property and the sale of the Interests and to pay any other deferred fees and expenses." This representation is consistent with the requirements of a Section 1031 exchange. The PPM had a section entitled, "Estimated Use of Proceeds," which included multiple tables showing that the funds invested by Plaintiffs would be used to pay for the

acquisition of the Trust Property and associated fees, expenses and commissions. The PPM further represented that the Trust cannot "commingle its assets with those of any other person."

35.     The Supplement updated the "Estimated Use of Proceeds" section of the PPM.  The update continued to represent that the funds invested by Plaintiffs would be used to pay for the acquisition of the Trust Property and associated fees, expenses and commissions.

## REPRESENTATIONS ABOUT PREFERRED EQUITY

36.     The PPM represented that to close the acquisition of the Trust Property before sufficient interests were sold to finance the acquisition together with the proceeds of a loan from UBS AG, the Trust, through Nelson Partners, might obtain capital from a "Preferred Equity Provider."  The PPM represented that if used, Nelson Partners would cause the Trust to use such capital to close the acquisition of the Trust Property.  The PPM further represented in two separate sections that "[i]f capital is provided by the Preferred Equity Provider, then upon the sale of Interests, the net proceeds, less commissions and fees paid to broker dealers and their representatives, will be used to repay such capital."

37.     The PPM included a paragraph captioned "RISKS RELATED TO THE PREFERRED EQUITY," in which it made only the following disclosure as to the risk related to the Preferred Equity:

> If utilized, the provision of capital by the Preferred Equity Provider would allow the acquisition of the Property to close prior to the sale of sufficient Interests to raise the minimum required closing equity. If capital is provided by the Preferred Equity Provider, subject to limited exceptions, all net sales proceeds from the sale of Interests must be used to repay to the Preferred Equity Provider the capital it invested. If insufficient Interests are sold, the Preferred Equity Provider may not be fully repaid and there may be insufficient funds to pay the expenses, fees and commissions set forth in the Estimated Use of Proceeds (See "ESTIMATED USE OF PROCEEDS") that were not paid at the closing of the acquisition. If proceeds from the sale of Interests are not available to pay such expenses, fees and commissions, then the Trust may be

required to use income from the Property to pay such
items, reducing cash flow available to operate the Property
and to pay distributions to the Investors.

38.     The PPM, thus, represented that the most serious and only risk to
Plaintiffs if Nelson Partners failed to repay the Preferred Equity Provider would be a
reduction in the "cash flow available to operate the Property and to pay distributions
to the Investors."  They were never told that a failure to repay could result in the loss
of the Trust Property.

39.     Nelson Partners issued the Supplement dated March 2, 2019.  The
Supplement represented that (a) on February 26, 2019, the Trust acquired the Trust
Property for $123,210,000 plus transaction costs and expenses (for a total of
$132,124,000) and (b) "a preferred equity provider contributed $35,000,000 to the
Trust, through Affiliates of the Trust, which capital was used to close the
acquisition" of the Trust Property.  The Supplement further represented that "[t]hree
special purpose entities, each owned by a separate investment fund managed by
Axonic Capital, provided the preferred capital."  The Supplement (and this
Complaint) collectively defined those special purpose entities as the "Preferred
Equity Providers."

40.     The Supplement repeated the representation in the PPM that "[u]pon
the sale of Interests, the net proceeds, less commissions and fees paid to broker
dealers and their representatives, will be used to repay the capital contributed by the
Preferred Equity Providers."

41.     The Supplement does not update the risk factor in the PPM the most
serious and only risk to Plaintiffs if Nelson Partners failed to repay the Preferred
Equity Provider was a reduction in the "cash flow available to operate the Property
and to pay distributions to the Investors."

/////

/////

# REPRESENTATIONS ABOUT DISTRIBUTIONS

42.    Nelson Partners represented that "Investors can sell a little/no income producing property (e.g. land) and purchase property(s) with greater cash flow performance (e.g. student housing)."

43.    The PPM represented that "[t]he Investors will be entitled, based on their respective Interests in the Trust, to all operating cash flow of the Trust, if any, and all net cash proceeds from any sale, exchange, or refinancing of the Property, after payment of amounts due under the Loan and reimbursement of the Trustees for expenses and reserves for amounts necessary to pay anticipated ordinary current and future expenses of the Trust." The PPM further represented "[a]ny such cash flow will be distributed on a monthly basis."

44.    The PPM included projections for the amount of cashflow that the Investors should expect. The Supplement updated those projections, representing that Investor should expect to receive on a monthly basis distributions as follows:

| Lease Year | Estimated Annual Gross Stated Rent as a Percentage of Equity |
|---|---|
| Lease Years 1 and 2 | 6.13% |
| Lease Year 3 | 6.23% |
| Lease Year 4 | 6.25% |
| Lease Years 5 and 6 | 6.50% |
| Lease Years 7 and 8 | 6.75% |
| Lease Years 9 and 10 | 7.00% |

45.    The Supplement's representation that distributions would increase over time was consistent with Nelson Partners' representation on its website that "[o]verall the rental revenue, rental rates, and net operating income in student housing properties across the country have continued to rise year over year due to student demand and limited space."

/////

CASE NO.

COMPLAINT

## THE OFFERING RAISED $75.5 MILLION

46.    The offering of the interests closed in February 2020 after raising approximately $75.5 million.  Plaintiffs collectively invested $34,833,207.11 million in reliance on the misrepresentations and omissions in the PPM and the Supplement.

47.    Plaintiffs stopped receiving monthly distributions in March 2020. Blaming the COVID-19 pandemic, Nelson Partners suspend the distributions, which have not resumed as of the date this Complaint was filed.

## PLAINTIFFS LEARN THE TRUST PROPERTY WAS "SOLD"

48.    On December 30, 2020, Plaintiffs received a letter, dated December 22, 2020, from a law firm named, Cain & Skarnulis PLLC.  The letter represented that the law firm was writing "on behalf of the Special Members of NP Skyloft JV, LLC, the sole member of the Signature Trustee."  The letter told Plaintiffs that "[p]ursuant to Section 5.03 of the Trust Agreement, you are hereby notified that the Signature Trustee intends to cause the Trust to sell the [Trust] Property in a simultaneous sign-and-close transaction."  No other information was provided about the proposed sale of the Trust Property and the letter failed to name the "Special Members."  The letter also says nothing about Nelson Partners' failure to repay the Preferred Equity Providers.

49.    In late January 2021, Plaintiffs received another letter from Cain & Skarnulis PLLC, dated January 22, 2021.  The letter represented that the trustee sold the Trust Property to TCG Skyloft Owner, LLC ("TCG").  The letter did not disclose the amount received by the Trust from the sale of the Trust Property.  The letter, however, represented that Nelson Partners had only repaid $5,127,677.02 of the $35,000,000 owed by Nelson Partners to the Preferred Equity Providers.  The letter further represented that Nelson Partners' failure to repay the Preferred Equity Providers gave the Preferred Equity Providers certain rights, including a "forced sale mechanism," allowing them to sell the Trust Property.  Those rights, including the

forced sale mechanism, were not disclosed in the PPM or the Supplement.

50.    Plaintiffs later learned that Axonic sold the Trust Property to an entity formed by it and another entity, called TCG Skyloft Owner LLC (the "Buyer"), which is completely owned by TCG Skyloft JV LLC.  Axonic and the other entity own TCG Skyloft JV LLC.  Axonic's interest in TCG Skyloft JV LLC and, ultimately, the Buyer, was given a value of $43,875,000.  The interest of the other owner of TCG Skyloft JV LLC is valued at only $2,000,000.  Thus, Axonic's interest in TCG Skyloft JV LLC and the Buyer is 21 times larger than the other owner of TCG Skyloft JV LLC, giving it the largest economic interest in the Buyer by a huge margin.

51.    The Limited Liability Company Agreement of TCG Skyloft JV LLC also gives Axonic management control over TCG Skyloft JV LLC, including the approval of expenditures, the re-sale of the Trust Property, budgets, business plans, the hiring of employees, and replacement or termination of officers and directors. Thus, Axonic also has management control over the Buyer.

52.    The foregoing shows that Axonic used the Trust to sell the Trust Property to an entity in which it has supermajority economic interest and in which it controls all major decisions.  In effect, Axonic used the Trust to wipe-out the interests of Plaintiffs and the other investors and effectively give the property to itself.

### THE TRUTH EMERGES

53.    Defendants have never voluntarily disclosed the truth to Plaintiffs or the other investors.  But through the investigation of Plaintiffs' counsel and documents obtained from filings in other cases involving the Trust, Plaintiffs have learned that the representations in the PPM and Supplement set forth above were materially false and misleading.

/////

/////

**NELSON PARTNERS FAILED TO USE THE INVESTOR FUNDS AS REPRESENTED IN THE PPM AND SUPPLEMENT**

54. As alleged above, the PPM represented that "[t]he Offering Proceeds will be used to cover the reimbursement of closing, financing, and acquisition costs that the Trust or the Sponsor incurred in connection with the acquisition of the Property and the sale of the Interests and to pay any other deferred fees and expenses." The PPM further represented that "[i]f capital is provided by the Preferred Equity Provider, then *upon the sale of Interests*, the net proceeds, less commissions and fees paid to broker dealers and their representatives, will be used to repay such capital." [Emphasis added.] The Supplement represented that "*[u]pon the sale of Interests*, the net proceeds, less commissions and fees paid to broker dealers and their representatives, *will be used to repay* the capital contributed by the Preferred Equity Providers." [Emphasis added.] The offering raised approximately $75.5 million and after the payment of commissions, fees and related closing costs, the Supplement represented that $68,279,000 would be available to use toward the acquisition of the Trust Property, which amount was more than enough to repay the $35,000,000 that JV LLC owed to the Preferred Equity Providers.

55. Nelson Partners' failure to repay the Preferred Equity Providers alone shows that Nelson and Nelson Partners did not use the Plaintiffs' funds as represented in the PPM and Supplement. Since the offering raised twice the amount of money needed to repay the Preferred Equity Providers, Nelson Partners should have repaid the Preferred Equity Providers *before* the offering closed because the PPM and the Supplement represented that "*upon the sale of Interests*," the net proceeds "*will be used to repay*" the Preferred Equity Providers. These representations were *obviously false*.

56. Former employees of Nelson Partners have reported that Nelson Partners comingles the funds raised from its various student housing syndications

CASE NO.

COMPLAINT

and does not use such funds solely to acquire the properties as represented here in the PPM and Supplement.  Such former employees have reported that funds are used to pay the acquisition costs for unrelated student housing syndications and to pay Nelson Partners' overhead expenses unrelated to the particular syndication.  One former employee heard that moneys were also sent to offshore bank accounts. Correspondence from Nelson Partners' counsel to Plaintiffs and other investors in the Trust all but admits that funds from the offering of interests in the Trust were misappropriated and used to acquire another student housing project called, Sol y Luna, which Plaintiffs are informed and believes that Nelson admitted under oath in another case.  Moreover, emails from Nelson to DeGiacinto after Nelson Partners failed to repay the Preferred Equity Providers state that Nelson and Nelson Partners would use money raised from subsequent student housing syndications to repay Axonic and the Preferred Equity Providers.

57.    Based on the foregoing, Plaintiffs are informed and believe and thereon allege that Nelson and Nelson Partners misappropriated the funds provided by Plaintiffs to invest in the Trust, which shows that the following representations were false when made:

a.    "The Offering Proceeds will be used to cover the reimbursement of closing, financing, and acquisition costs that the Trust or the Sponsor incurred in connection with the acquisition of the Property and the sale of the Interests and to pay any other deferred fees and expenses;"

b.    The investment in the Trust was structured to comply with Section 1031;

c.    "An Investor's acquisition of an Interest 'should' be treated as a direct acquisition of an interest in the Property for purposes of Section 1031;"

d.    The Estimated Use of Proceeds in the PPM and the Supplement;

e.    "If capital is provided by the Preferred Equity Provider, then upon the sale of Interests, the net proceeds, less commissions and fees paid to

COMPLAINT
CASE NO.

broker dealers and their representatives, will be used to repay such capital;" and

      f.     "Upon the sale of Interests, the net proceeds, less commissions and fees paid to broker dealers and their representatives, will be used to repay the capital contributed by the Preferred Equity Providers."

## AXONIC'S AND NELSON PARTNERS' MISREPRESENTATIONS ABOUT THE PREFERRED EQUITY

58.    The Supplement was issued on March 2, 2019.  Just four days before the Supplement was issued, on February 26, 2019, the Preferred Equity Providers were admitted as "Special Members" into JV, LLC.  The Preferred Equity Providers' admission to JV, LLC was made pursuant to a Limited Liability Company Agreement of NP Skyloft JV LLC, dated February 26, 2019 (the "JV LLC Agreement"), the existence and terms of which the Supplement failed to disclose.

59.    Pursuant to the secret JV LLC Agreement, the Preferred Equity Providers made their $35,000,000 capital contribution to JV LLC and, in exchange for the $35,000,000 capital contribution, the Preferred Equity Providers became "Special Members" of JV LLC and received "Special Member Interests" in JV LLC.

60.    The secret JV LLC Agreement further required that JV LLC — not the Trust — to redeem or repurchase the Preferred Equity Providers' Special Member Interests no later than February 25, 2020 (the "Mandatory Redemption") to repay the capital provided by the Preferred Equity Providers.  The Mandatory Redemption was concealed from Plaintiffs.

61.    Pursuant to the secret JV LLC Agreement, JV, LLC's failure to make the Mandatory Redemption on or before February 25, 2020 constituted a "Material Default" and gave the Preferred Equity Providers (a) the right to an increased return on their capital contribution, (b) the right to immediately remove and replace the Managing Member of NP Skyloft JV, LLC (and to thereby control the trustee and Trust), and (c) the unilateral right and full power and authority to cause the sale of

the Trust Property "to an independent third party on such terms and conditions as Special Member shall approve in the exercise of its sole and absolute discretion (a 'Forced Sale')." Such facts were concealed from Plaintiffs. Moreover, the rights given to the Preferred Equity Providers are unheard of in the context of syndicated Section 1031 exchange offerings. Consequently, Plaintiffs had no reason to suspect that they might even exist.

62.    The foregoing facts themselves constitute omissions of material fact necessary to make the representations in the PPM and Supplement about the Preferred Equity Providers not misleading. The omissions of material fact were:

a.    The JV LLC Agreement required JV LLC to repay the Preferred Equity Providers on or before February 25, 2020;

b.    JV LLC's failure to repay the Preferred Equity Providers on or before February 25, 2020 would constitute a material breach of the JV LLC Agreement;

c.    JV LLC's failure to repay the Preferred Equity Providers on or before February 25, 2020 would increase by several million dollars that amount that must be paid to Axonic and the Preferred Equity Providers to redeem the capital provided by the Preferred Equity Providers;

d.    JV LLC's failure to repay the Preferred Equity Providers on or before February 25, 2020 would allow Axonic and the Preferred Equity Providers to take control of JV LLC, the Trust's trustee and the Trust;

e.    JV LLC's failure to repay the Preferred Equity Providers on or before February 25, 2020 would allow Axonic and the Preferred Equity Providers to use their control of JV LLC, the Trust's Trustee and the Trust to sell the Trust Property;

f.    The sale of the Trust Property by Axonic and the Preferred Equity Providers pursuant to the JV LLC Agreement's default provisions would be a complete windfall for Axonic and the Preferred Equity Providers

because the sale of the Trust Property by them would not satisfy or diminish the amount that must be repaid to redeem the capital provided by the Preferred Equity Providers; and

g.      The JV LLC Agreement's default provisions gave Axonic and the Preferred Equity Providers the ability to sell the Trust Property when the debt owed to them was owed by JV LLC, and not the Trust.

63.      The foregoing facts also show that the representation in the PPM that "[i]f proceeds from the sale of Interests are not available to pay such expenses, fees and commissions, then the Trust may be required to use income from the Property to pay such items, reducing cash flow available to operate the Property and to pay distributions to the Investors" was false when made.  It was false when made because a failure to repay the Preferred Equity Providers on or before February 25, 2020 would not only potentially reduce the cash flow available to pay distributions to Plaintiffs and the other investors, but it would also: (a) constitute a material breach of the JV LLC Agreement; (b) increase by several million dollars that amount that must be paid to Axonic and the Preferred Equity Providers to redeem the capital provided by the Preferred Equity Providers; (c) allow Axonic and the Preferred Equity Providers to take control of JV LLC, the Trust's Trustee and the Trust; (d) allow Axonic and the Preferred Equity Providers to use their control of JV LLC, the Trust's Trustee and the Trust to sell the Trust Property; (e) give a complete windfall for Axonic and the Preferred Equity Providers because the sale of the Trust Property by them would not satisfy or diminish the amount that must be repaid to redeem the capital provided by the Preferred Equity Providers; and (f) give Axonic and the Preferred Equity Providers the ability to sell the Trust Property when the debt owed to them was owed by JV LLC, and not the Trust.

/////

/////

/////

## NELSON PARTNERS' MISREPRESENTATIONS
## ABOUT DISTRIBUTIONS

64.     As alleged above, the PPM represented that Plaintiffs and the other
investors would receive monthly distributions of "all operating cash flow of the
Trust."  Plaintiffs, however, received only one distribution.

65.     Former employees of Nelson Partners have reported that Nelson
Partners and its affiliate, NP-PM, routinely failed to pay to investors distributions
based on the operating cash flows of the student housing syndications managed by
them.  Instead, Nelson Partners and NP-PM, at Nelson's direction, routinely
comingled funds derived from the operations of the various student housing
syndications managed by them, taking excess cashflows from better performing
student housing projects to pay distributions to poorer performing student housing
projects to mask the poor performance.  The former employees further reported that
Nelson Partners and NP-PM maintained at least two sets of accounting records; one
using QuickBooks and another set is maintained on Encarta property management
software.  The former employees also reported that neither set of books accurately
reflected the financial positions of the student housing projects.

66.     Former employees of Nelson Partners have reported that the
represented distributions in the PPM and Supplement were complete fabrications
and could not be achieved over time.  The projected distributions, according to the
former employees, were based on unrealistically low operating costs and annual rent
increases to students and their families that could not be sustained overtime.  When
employees informed Nelson that the projected distributions could not be achieved,
Nelson refused to change them and only wanted to include projected distributions
that were higher than his competitors to allow Nelson Partners to continue to attract
new investors for new student housing project syndications because Nelson Partners
receives substantial fees and commissions from closing offerings for new
syndications.  Thus, the represented distributions in the PPM and Supplement were

COMPLAINT
CASE NO.

not genuinely believed by Nelson and Nelson Partners.

67.    Plaintiffs, therefore, are informed and believe and thereon allege that Plaintiffs would receive monthly distributions of "all operating cash flow of the Trust" was false when made.

## DEFENDANTS MADE THE FALSE STATEMENTS AND OMISSIONS

68.    Nelson and Nelson Partners prepared the PPM and the Supplement, which included the misrepresentations and omissions.  Nelson and Nelson Partners are the "makers" of the misrepresentations and omissions alleged herein.

69.    The JV LLC Agreement gave the Preferred Equity Providers the ultimate authority over the content of the Supplement.  The JV LLC Agreement defined as an event of "Material Default" as "(aa) any private offering memorandum/private placement memorandum regarding the BI Unit Sales is amended, supplemented, modified or terminated without the prior written consent of Special Member (which consent may be granted or withheld in Special Member's sole discretion)."  The "BI Unit Sales" are the sales of the interests in the Trust.  The Axonic Preferred Equity Providers are the "Special Member."  Therefore, the Supplement could not have been issued without the Axonic Defendants' "prior written consent."  This gave them the ultimate authority over the Supplement and its content.

70.    DeGiacinto and Axonic controlled the Preferred Equity Providers, which acted only through the agents and employees of Axonic, including DeGiacinto.  This authority and control over the Preferred Equity Providers also cause DeGiacinto and Axonic to be the makers of the misrepresentations and omissions in the Supplement.

71.    Since the Supplement supplemented the PPM, DeGiacinto, Axonic and the Preferred Equity Providers also had ultimate authority over the PPM and its content, causing them to be the makers of the misrepresentations and omissions in the PPM as well.

COMPLAINT

CASE NO.

## SCIENTER

72.     The allegations above, including the allegations based on information supplied by former employees of Nelson Partners, show that Nelson and Nelson Partners made the misrepresentations about whether the purchase of the Interests would qualify as a like-kind exchange, the uses of the funds invested by Plaintiffs, the payment of distributions, and the projected distributions, and the failure to disclose the misappropriation of the investors funds and the comingling of the cash flows from the operations of the various student housing projects syndicated and managed by them knowing the such misrepresentations and omissions were false or in reckless disregard of the truth.

73.     Nelson, Nelson Partners, DeGiacinto, Axonic and the Preferred Equity Providers knew that the omissions and misrepresentations about the Preferred Equity were false and materially misleading.

74.     Nelson, Nelson Partners, DeGiacinto, Axonic and the Preferred Equity Providers agreed in Section 13.20 of the JV LLC Agreement that "Managing Member agrees not to disclose or permit the disclosure of any of the terms of this Agreement or any other documents executed in connection with this Agreement or the Preferred Equity Providers …."  Nelson, Nelson Partners, DeGiacinto, Axonic and the Preferred Equity Providers further specifically addressed what could be disclosed to the Investors.  Section 13.20 carves out from the secrecy provisions disclosures "reasonably necessary to comply with federal or state securities laws." But they expressly limited such disclosures to "the tax treatment and tax structure of the transaction contemplated by this Agreement and all materials of any kind (including opinions or other tax analyses) that are provided to it relating to such tax treatment and tax structure."  To underscore the intent to keep the JV LLC Agreement and its terms secret even in the face of the need to comply with the securities laws, Nelson, Nelson Partners, DeGiacinto, Axonic and the Preferred Equity Providers agreed that "[f]or the avoidance of doubt, this authorization is not

CASE NO.

COMPLAINT

intended to permit disclosure of the names of, or other identifying information regarding, the participants in the transaction, or of any information or the portion of any materials not relevant to the tax treatment or tax structure of the transaction." Thus, even for securities law compliance Nelson, Nelson Partners, DeGiacinto, Axonic and the Preferred Equity Providers agreed to only provide material "relevant to the tax treatment or tax structure of the transaction." Under the JV LLC Agreement, the existence of the agreement and its terms could not be disclosed to Plaintiffs, including the Mandatory Redemption and Forced Sale provisions. This agreement shows that the failure to disclose the extraordinary rights given to Axonic and the Preferred Equity Providers was either intentional or in reckless disregard of the truth.

**FIRST CLAIM FOR RELIEF**
**for**
**VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT**
**Against All Defendants**

75.    Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

76.    In connection with the sale of the securities — the interests in the Trust — Defendants, using the instrumentality of interstate commerce, made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement not misleading.

77.    Defendants made and omitted the material facts alleged above knowing that their representations and omissions were false or in reckless disregard of the truth.

78.    Defendants' false statements and omissions were material in that any reasonable investor would have considered such information important in deciding whether to invest in the Trust and such information would have materially altered the total mix of information available to the Investors through the PPM and the

CASE NO.                                                    COMPLAINT

Supplement.

79.     Plaintiffs relied on Defendants' false representations in the PPM and the Supplement, and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement. Plaintiffs would not have invested in the Trust had they known the truth.

80.     As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Plaintiffs to suffer damages, which includes the loss of the entire value of their respective investments in the Trust.

81.     The PPM and Supplement, which omitted the material facts, were provided to the Investors in connection with the purchase or sale of securities, the Interests in the Trust.

82.     Thus, Defendants violated §10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in that they (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts; and (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiffs in connection with their Investment in the Trust. Plaintiffs have suffered damages in that, as a result of the Defendants' wrongful conduct alleged herein, their interests, for which they paid a total of approximately $34,833,207.11, are now worthless.

### SECOND CLAIM FOR RELIEF
#### for
### ELDER FINANCIAL ABUSE UNDER CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTIONS 15657.5 AND 15610.30
#### Against All Defendants

83.     Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

84.     As reflected in their respective responses to the Purchaser Questionnaire, Plaintiffs Forrest B. Allen, Kathy Allen, Jess E. Benton, Ann M.

CASE NO.                                                                    COMPLAINT

Benton, Daniel W. Chinn, Juliana Chinn, Richard M. Deluna, Matilde F. Deluna, Steven Dente, Hadia Finley, Raymond Gould, Sandra Gould, David J. Grant, Lois D. Schultz-Grant, Emile Kishek, Paul E. Larson, Barry Laufman, Helene Laufman, Jeffrey Lubetkin, Abdul S. Masoud, Habiba Masoud, Judith McClintic, Philip H. Milner, William Rendahl, Rick Schillinger, Joanne D. Schott, Steven Ninchun Sheng, Rounda Sheng, Paul Toogood, Dennis John Woodruff, Kenneth K. Lee, Douglas Collins, Robert C. Norling, Karen D. Norling, and Marc Kircos were residents of the State of California and were 65 years or older at the time they purchased their respective interests in the Trust and are referred to as the "California Elder Plaintiffs."

85.    As alleged above, Defendants, with the intent to defraud, took, appropriated, obtained or retained real or personal property of the California Elder Plaintiffs, by taking, appropriating, obtaining, and retaining the funds invested by the California Elder Plaintiffs in the Trust and taking the Trust Property, in which the California Elder Plaintiffs held beneficial interests.

86.    Defendants are, therefore, liable to the California Elder Plaintiffs under California Welfare and Institutions Code § 15657.5 for financial abuse, as defined under California Welfare and Institutions Code § 15610.30.

87.    Defendants acted with the intent to cause injury to the California Elder Plaintiffs.  Defendants further engaged in despicable conduct carried out by them with a willful and conscious disregard of the rights of the California Elder Plaintiffs. Defendants thereby subjected the California Elder Plaintiffs to cruel and unjust hardship.  Defendants acted with deceit and concealed material facts from the California Elder Plaintiffs and concealed material facts from the California Elder Plaintiffs, which are alleged above.  Defendants made these material misrepresentations and omissions to induce the California Elder Plaintiffs to purchase the interests.  Pursuant to California Civil Code section 3294, such acts of oppression, fraud, and/or malice entitle the California Elder Plaintiffs, in addition to

COMPLAINT
CASE NO.

1  the actual damages, to an award of punitive or exemplary damages for the sake of

2  making an example of Defendants and by way of punishing them.

3  **THIRD CLAIM FOR RELIEF**
**for**

4  **VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTIONS 25400(D) AND 25500**

5  **Against All Defendants**

6      88.    Plaintiffs incorporate and re-allege herein by this reference paragraphs

7  1 to 74, inclusive, as though fully set forth at length.

8      89.    The offer to sell the interests in the Trust to all Plaintiffs originated in

9  California, and all Plaintiffs' offer to buy the interests in the Trust was accepted in

10  California.

11      90.    Defendants, for the purpose of inducing Plaintiffs' purchase of

12  securities, made or materially participated in the act of making the false and

13  misleading statements of material fact in the PPM and Supplement alleged above

14  and omitted to state material facts alleged above necessary in order to make the

15  statements made in the PPM and Supplement, in light of the circumstances under

16  which they were made, not misleading.

17      91.    Defendants knew or had reasonable grounds to believe that these

18  statements and omissions were false and misleading.

19      92.    As the direct and proximate result of the fraudulent conduct of

20  Defendants, Plaintiffs have been damaged.

21  **FOURTH CLAIM FOR RELIEF**
**for**

22  **VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTIONS 25401 AND 25501**

23  **Against All Defendants**

24      93.    Plaintiffs incorporate and re-allege herein by this reference paragraphs

25  1 to 74, inclusive, as though fully set forth at length.

26      94.    The offer to sell the interests in the Trust to all Plaintiffs originated in

27  California, and all Plaintiffs' offer to buy the interests in the Trust was accepted in

28  California.

{00011532}                                          51

CASE NO.

COMPLAINT

95.     Plaintiffs are informed and believe and thereon allege that the
Defendants reviewed, approved, and participated in the drafting of the PPM's and
the Supplement's representations, which included the misrepresentations and
omissions alleged above.  Thus, Plaintiffs are further informed and believe and
thereon allege that Defendants are responsible for the misrepresentations and
omissions in the PPM and the Supplement.

96.     As alleged above, Defendants' false representations in the PPM and the
Supplement and the representations made misleading as a result of Defendants'
failure to disclose the omitted facts in the PPM and Supplement have caused
Plaintiffs to suffer damages, which includes the entire value of their respective
investments in the Trust.

97.     Thus, Defendants violated California Corporations Code §25401 in that
they omitted material facts from the PPM and Supplement in connection with the
offer and sale of the interests to the California Plaintiffs.  The California Plaintiffs
have suffered damages in that, as a result of Defendants' wrongful conduct alleged
herein, their interests in the Trust are now worthless.  Therefore, the Plaintiffs sue
for rescission and damages.

**FIFTH CLAIM FOR RELIEF**
**for**
**VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTION**
**25504.1**
**Against All Defendants**

98.     Plaintiffs incorporate and re-allege herein by this reference paragraphs
1 to 74, inclusive, as though fully set forth at length.

99.     The offers to sell the interests in the Trust to all Plaintiffs originated in
California, and all Plaintiffs' offers to buy the interests in the Trust were accepted in
California.

100.   Defendants materially assisted each other in violating California
Corporations Code §25401 with the intent to deceive and defraud Plaintiffs and,
under California Corporations Code §25504.1, are liable jointly and severally with

COMPLAINT
CASE NO.

each other for their respective violations of California Corporation Code §25401.

101.    Plaintiffs are persons who purchased the interests in the Trust. Plaintiffs sue for rescission and damages.

**SIXTH CLAIM FOR RELIEF**
**for**
**VIOLATION OF CODE OF ALABAMA SECTIONS**
**8-6-19(a)(2) AND 8-6-19(c)**
**Against All Defendants**

102.    Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

103.    Plaintiffs Henry H. Brewster, Jr. and Barbara W. Brewster (the "Alabama Plaintiffs") were residents of the State of Alabama at the time they purchased their respective interests in the Trust.

104.    The Alabama Plaintiffs are informed and believe and thereon allege that the Defendants reviewed, approved, and participated in the drafting of the PPM's and the Supplement's representations, which included the misrepresentations and omissions alleged above.  Thus, the Alabama Plaintiffs are further informed and believe and thereon allege that Defendants are responsible for the misrepresentations and omissions in the PPM and the Supplement.

105.    As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused the Alabama Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

106.    Thus, Defendants violated Code of Alabama §8-16-9(a)(2) in that, in connection with the offer and sale of the interests to the Alabama Plaintiffs, they made untrue statements of material fact in the PPM and Supplement and they omitted material facts from the PPM and Supplement necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.  The Alabama Plaintiffs did not know of such untruths and omissions.

The Alabama Plaintiffs have suffered damages in that, as a result of Defendants' wrongful conduct alleged herein, their interests in the Trust are now worthless. Therefore, the Alabama Plaintiffs sue for the consideration they paid for their interests in the Trust together with interest at six percent per year from the date of payment, court costs and reasonable attorneys' fees, less the amount of any income received on their interests in the Trust, upon the tender of their interest in the Trust.

107.   Defendants directly or indirectly control the Defendants liable hereunder and Defendants materially aided each other in violation Code of Alabama Section 8-6-19(a)(2) and, under Code of Alabama Section 8-6-19(c), are liable to the Alabama Plaintiffs jointly and severally with each other for their respective violations of Code of Alabama Section 8-6-19(a)(2).

## SEVENTH CLAIM FOR RELIEF
### For
### VIOLATION OF ARIZONA REVISED STATUTE SECTION 44-1998(A)
### Against all Defendants

108.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

109.   Plaintiffs Heide Feingold and Adam Feingold (the "Arizona Plaintiffs") were residents of the State of Arizona at the time they purchased their respective interests in the Trust.

110.   The Arizona Plaintiffs are informed and believe and thereon allege that the Defendants reviewed, approved, and participated in the drafting of the PPM's and the Supplement's representations, which included the misrepresentations and omissions alleged above.  Thus, the Arizona Plaintiffs are further informed and believe and thereon allege that Defendants are responsible for the misrepresentations and omissions in the PPM and the Supplement.

111.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused the

Arizona Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

112.   Thus, Defendants violated Arizona Revise Statutes §44-1998(A) in that, in connection with the offer and sale of the interests in the Trust to the Arizona Plaintiffs, they made untrue statements of material fact in the PPM and Supplement and they omitted material facts from the PPM and Supplement necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.  The Arizona Plaintiffs have suffered damages in that, as a result of Defendants' wrongful conduct alleged herein, their interests in the Trust are now worthless.  Therefore, the Arizona Plaintiffs sue for the consideration they paid for their interests in the Trust together with interest, less the amount of any income received on their interests in the Trust, on the tender of their interest in the Trust.

**EIGHTH CLAIM FOR RELIEF**
**for**
**VIOLATION OF ARIZONA REVISED STATUTE SECTION 44-1991**
**Against All Defendants**

113.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

114.   The Arizona Plaintiffs were residents of the State of Arizona at the time they purchased their respective interests in the Trust.

115.   The Arizona Plaintiffs are informed and believe and thereon allege that the Defendants reviewed, approved, and participated in the drafting of the PPM's and the Supplement's representations, which included the misrepresentations and omissions alleged above.  Thus, the Arizona Plaintiffs are further informed and believe and thereon allege that Defendants are responsible for the misrepresentations and omissions in the PPM and the Supplement.

116.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused the

Arizona Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

117.   Thus, Defendants violated Arizona Revised Statute §44-1991(A)(2) in that, in connection with the offer and sale of the interests in the Trust to the Arizona Plaintiffs, they directly or indirectly made untrue statements of material fact in the PPM and Supplement and they omitted material facts from the PPM and Supplement necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.  The Arizona Plaintiffs have suffered damages in that, as a result of Defendants' wrongful conduct alleged herein, their interests in the Trust are now worthless.  Therefore, pursuant to Arizona Revised Statute §44-2002(A) the Arizona Plaintiffs sue to recover their damages, with interest, taxable court costs, and reasonable attorneys' fees.

**NINTH CLAIM FOR RELIEF**
**For**
**VIOLATION OF ARIZONA REVISED STATUTE SECTION 44-2003**
**Against all Defendants**

118.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

119.   Defendants each participated in and/or induced the sale of the interests in the Trust in violation of Arizona Revised Statute §44-1991(A)(2) and, under Arizona Revised Statute §44-2003, Defendants are jointly and severally liable with each other to the Arizona Plaintiffs for the amount of the Arizona Plaintiffs' damages, with interest, taxable court costs and reasonable attorney fees.

**TENTH CLAIM FOR RELIEF**
**for**
**VIOLATION OF COLORADO REVISED STATUTE SECTIONS 11-51-501(1) and 11-51-604(3)**
**Against all Defendants**

120.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

121.   Plaintiffs Richard Hodge, Mary Hodge, William E. Smith, Gail

CASE NO.

COMPLAINT

Kingdon, Chris Kingdon, Greg Dahlke, Rachel Dahlke, and Carl John Kugler III (the "Colorado Plaintiffs") were residents of the State of Colorado at the time they purchased their respective interests in the Trust.

122. In connection with the sale of the securities — the interests in the Trust — Defendants made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

123. Defendants made and omitted the material facts alleged above knowingly, recklessly or with the intent to defraud the Colorado Plaintiffs.

124. The Colorado Plaintiffs did not know of such untruths and omissions.

125. As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Colorado Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

126. Thus, Defendants violated Colorado Revised Statute §11-55-501(1) in that, in connection with the offer and sale of the interests in the Trust to the Colorado Plaintiffs, they knowingly, recklessly or with the intent to defraud made untrue statements of material fact in the PPM and Supplement and omitted material facts from the PPM and Supplement necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading. The Colorado Plaintiffs have suffered damages in that, as a result of Defendants' wrongful conduct alleged herein, their interests in the Trust are now worthless. Therefore, pursuant to Colorado Revised Statute 11-51-604(3), the Colorado Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

/////

/////

## ELEVENTH CLAIM FOR RELIEF
### for
## VIOLATION OF COLORADO REVISED STATUTE SECTIONS 11-51-501(1) AND 11-51-604(4)
### Against all Defendants

127.    Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

128.    The Colorado Plaintiffs were residents of the State of Colorado at the time they purchased their respective interests in the Trust.

129.    In connection with the sale of the securities — the interests in the Trust — Defendants made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

130.    The Colorado Plaintiffs did not know of such untruths and omissions.

131.    Thus, Defendants violated Colorado Revised Statute §11-55-501(1)(b) in that, in connection with the offer and sale of the interests in the Trust to the Colorado Plaintiffs, they made untrue statements of material fact in the PPM and Supplement and omitted material facts from the PPM and Supplement necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.  The Colorado Plaintiffs have suffered damages in that, as a result of Defendants' wrongful conduct alleged herein, their interests in the Trust are now worthless.  Therefore, pursuant to Colorado Revised Statute 11-51-604(4), the Colorado Plaintiffs sue to recover the consideration paid for their interests in the Trust, together with interest at the statutory rate from the date of payment, costs, and reasonable attorney fees, less the amount of any income received on the interests in the Trust, upon the tender of the security.

/////

/////

/////

CASE NO.                                                                    COMPLAINT

1

## TWELFTH CLAIM FOR RELIEF
### for
## VIOLATION OF FLORIDA STATUTES SECTIONS 517.301 AND 517.312
### Against all Defendants

2

3

4      132.   Plaintiffs incorporate and re-allege herein by this reference paragraphs

5   1 to 74, inclusive, as though fully set forth at length.

6      133.   Plaintiffs Daniel Loredo, Carlos Prado Lyon, Peter J. Mainguy,

7   Dwayne H. Masemer, Alice B. Masemer, Stephen Puleo, Jr., Michelle Puleo Boutin,

8   Frank Tenteromano, Krystal Pescatore, and Gerald Waldman (the "Florida

9   Plaintiffs") were residents of the State of Florida at the time they purchased their

10  respective interests in the Trust.

11     134.   In connection with the sale and purchase of the investments and

12  securities — the interests in the Trust — Defendants violated Florida Statutes

13  Section 517.301 in that they made the false statements of material fact in the PPM

14  and Supplement alleged above and omitted the material facts alleged above that

15  were necessary to make the statements in the PPM and Supplement, in the light of

16  the circumstances under which they are made, not misleading.

17     135.   Defendants were, at a minimum, negligent in making

18  misrepresentations and omitting the material facts alleged.

19     136.   Such conduct constituted a device, scheme, or artifice to defraud the

20  Florida Plaintiffs.

21     137.   Such conduct constituted a transaction, practice, or course of business

22  which operated as a fraud or deceit upon the Florida Plaintiffs.

23     138.   The Florida Plaintiffs justifiably relied on the misrepresentations and

24  omissions by Defendants in investing in the Trust.

25     139.   Defendants, through their preparation or control of the content of the

26  PPM and Supplement, acted as agents of the direct seller of the securities.

27     140.   As alleged above, Defendants' false representations in the PPM and the

28  Supplement and the representations made misleading as a result of Defendants'

CASE NO.

COMPLAINT

failure to disclose the omitted facts in the PPM and Supplement have caused Florida Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

141.    Thus, Defendants violated Florida Securities Act, Florida Statute §517.301 and are liable under Florida Statute §517.312.  Therefore, pursuant to Florida Statute §517.211, the Florida Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

### THIRTEENTH CLAIM FOR RELIEF
### for
### VIOLATION OF HAWAII REVISED STATUTES SECTION 485A-509
### Against all Defendants

142.    Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

143.    Plaintiff Steve Ulene (the "Hawaii Plaintiffs") was a resident of the State of Hawaii at the time he purchased his respective interests in the Trust.

144.    In connection with the sale and purchase of the investments and securities — the interests in the Trust — Defendants made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

145.    Defendants in the exercise of reasonable care could have known of the untruths and omissions in the PPM and Supplement.

146.    The Hawaii Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust.

147.    Defendants, through their preparation or control of the content of the PPM and Supplement, acted as agents of the direct seller of the securities.

148.    As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants'

CASE NO.

COMPLAINT

failure to disclose the omitted facts in the PPM and Supplement have caused Hawaii
Plaintiffs to suffer damages, which includes the entire value of their respective
investments in the Trust.

149.    Thus, Defendants violated Hawaii Revised Statute §485A-509 and are
liable thereunder.  Therefore, the Hawaii Plaintiffs sue for recission, damages,
interest, costs and reasonable attorneys' fees.

**FOURTEENTH CLAIM FOR RELIEF**
for
**VIOLATION OF IDAHO STATUTES SECTION 30-14-509**
**Against all Defendants**

150.    Plaintiffs incorporate and re-allege herein by this reference paragraphs
1 to 74, inclusive, as though fully set forth at length.

151.    Plaintiff Scott Glen Kimball (the "Idaho Plaintiffs") was a resident of
the State of Idaho at the time they purchased their respective interests in the Trust.

152.    In connection with the sale and purchase of the investments and
securities — the interests in the Trust — Defendants made the false statements of
material fact in the PPM and Supplement alleged above and omitted the material
facts alleged above that were necessary to make the statements in the PPM and
Supplement, in the light of the circumstances under which they are made, not
misleading.

153.    Defendants in the exercise of reasonable care could have known of the
untruths and omissions in the PPM and Supplement.

154.    The Idaho Plaintiffs justifiably relied on the misrepresentations and
omissions by Defendants in investing in the Trust.

155.    Defendants, through their preparation or control of the content of the
PPM and Supplement, acted as agents of the direct seller of the securities.

156.    As alleged above, Defendants' false representations in the PPM and the
Supplement and the representations made misleading as a result of Defendants'
failure to disclose the omitted facts in the PPM and Supplement have caused Idaho

1   Plaintiffs to suffer damages, which includes the entire value of their respective

2   investments in the Trust.

3       157.   Thus, Defendants violated Idaho Statute §30-14-509 and are liable

4   thereunder.  Therefore, the Idaho Plaintiffs sue for recission, damages, interest, costs

5   and reasonable attorneys' fees.

6                    **FIFTEENTH CLAIM FOR RELIEF**
                              **for**
7   **VIOLATION OF ILLINOIS STATUTES Ch. 815 SECTIONS 5/12 AND 5/13**
                       **Against all Defendants**
8

9       158.   Plaintiffs incorporate and re-allege herein by this reference paragraphs

10  1 to 74, inclusive, as though fully set forth at length.

11      159.   Plaintiff Fred Tompkin (the "Illinois Plaintiff") was a resident of the

12  State of Illinois at the time he purchased his respective interests in the Trust.

13      160.   In connection with the sale and purchase of the investments and

14  securities — the interests in the Trust — Defendants violated Illinois Statutes Ch.

15  815 Section 5/12 in that they made the false statements of material fact in the PPM

16  and Supplement alleged above and omitted the material facts alleged above that

17  were necessary to make the statements in the PPM and Supplement, in the light of

18  the circumstances under which they are made, not misleading.

19      161.   The Illinois Plaintiffs justifiably relied on the misrepresentations and

20  omissions by Defendants in investing in the Trust.

21      162.   Defendants, through their preparation or control of the content of the

22  PPM and Supplement, controlled the direct seller of the securities with respect to the

23  content of the PPM and the Supplement.

24      163.   As alleged above, Defendants' false representations in the PPM and the

25  Supplement and the representations made misleading as a result of Defendants'

26  failure to disclose the omitted facts in the PPM and Supplement have caused Illinois

27  Plaintiffs to suffer damages, which includes the entire value of their respective

28  investments in the Trust.

164.   Thus, Defendants violated Illinois Statutes Ch. 815 Section 5/12 and are liable under Illinois Statutes Ch. 815 Section 5/13.  Therefore, the Illinois Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

## SIXTEENTH CLAIM FOR RELIEF
### for
## VIOLATION OF KANSAS STATUTES SECTION 17-12a509
### Against all Defendants

165.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

166.   Plaintiff Sunjay Dawar (the "Kansas Plaintiff") was a resident of the State of Kansas at the time he purchased his respective interests in the Trust.

167.   In connection with the sale and purchase of the investments and securities — the interests in the Trust — Defendants made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

168.   Defendants in the exercise of reasonable care could have known of the untruths and omissions in the PPM and Supplement.

169.   The Kansas Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust.

170.   Defendants, through their preparation or control of the content of the PPM and Supplement, acted as agents of the direct seller of the securities.

171.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Kansas Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

172.   Thus, Defendants violated Kansas Statute §30-14-509 and are liable

CASE NO.

COMPLAINT

thereunder. Therefore, the Kansas Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

## SEVENTEENTH CLAIM FOR RELIEF
### for
## VIOLATION OF MASSACHUSETTS GENERAL LAWS CH. 110A, § 410
### Against all Defendants

173.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

174.   Plaintiffs William Heiden and Cristina S. Heiden and Scott A. Clark and Patricia Clark (the "Massachusetts Plaintiffs") were residents of the State of Massachusetts at the time they purchased their respective interests in the Trust.

175.   In connection with the sale and purchase of the investments and securities — the interests in the Trust — Defendants made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

176.   Defendants in the exercise of reasonable care could have known of the untruths and omissions in the PPM and Supplement.

177.   The Massachusetts Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust and did not know of the untruths and omissions in the PPM and Supplement.

178.   Defendants, through their preparation or control of the content of the PPM and Supplement, controlled the direct seller of the securities with respect to the content of the PPM and the Supplement.

179.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Massachusetts Plaintiffs to suffer damages, which includes the entire value of their

CASE NO.

COMPLAINT

respective investments in the Trust.

180.   Thus, Defendants violated Massachusetts General Laws ch. 110A, § 410 and are liable thereunder.  Therefore, the Massachusetts Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

**EIGHTEENTH CLAIM FOR RELIEF**
**for**
**VIOLATION OF MISSOURI STATUTES SECTION 409.5-509**
**Against all Defendants**

181.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

182.   Plaintiffs Richard E. Griffard, Joan F. Griffard, Samuel Heiman, and Catherine Heiman (the "Missouri Plaintiffs") were residents of the State of Missouri at the time they purchased their respective interests in the Trust.

183.   In connection with the sale and purchase of the investments and securities — the interests in the Trust — Defendants made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

184.   Defendants in the exercise of reasonable care could have known of the untruths and omissions in the PPM and Supplement.

185.   The Missouri Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust.

186.   Defendants, through their preparation or control of the content of the PPM and Supplement, acted as agents of the direct seller of the securities.

187.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Missouri Plaintiffs to suffer damages, which includes the entire value of their

CASE NO.

COMPLAINT

respective investments in the Trust.

188.   Thus, Defendants violated Missouri Statute §409.5-509 and are liable thereunder.  Therefore, the Missouri Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

**NINETEENTH CLAIM FOR RELIEF**
**for**
**VIOLATION OF MONTANA STATUTES SECTION 30-10-307**
**Against all Defendants**

189.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

190.   Plaintiff Jacqueline Robin (the "Montana Plaintiff") was a resident of the State of Montana at the time she purchased their respective interests in the Trust.

191.   In connection with the sale and purchase of the investments and securities — the interests in the Trust — Defendants made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.  Thus, Defendants sold such securities by means of fraud or misrepresentation.

192.   The Montana Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust and did not know of the untruths and omissions in the PPM and Supplement.

193.   Defendants, through their preparation or control of the content of the PPM and Supplement, controlled the direct seller of the securities with respect to the content of the PPM and the Supplement.

194.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Montana Plaintiffs to suffer damages, which includes the entire value of their

CASE NO.

COMPLAINT

respective investments in the Trust.

195.    Thus, Defendants violated Montana Statutes Section 30-10-307 and are liable thereunder.  Therefore, the Montana Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

**TWENTIETH CLAIM FOR RELIEF**
**for**
**VIOLATION OF NEVADA REVISED STATUTES SECTION 90.660**
**Against all Defendants**

196.    Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

197.    Plaintiff Philip W. Johnson RLT (the "Nevada Plaintiffs") was a resident of the State of Nevada at the time he purchased the respective interests in the Trust.

198.    In connection with the sale and purchase of the investments and securities — the interests in the Trust — Defendants made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

199.    Defendants were, at a minimum, negligent in making misrepresentations and omitting the material facts alleged.

200.    Such conduct constituted a device, scheme, or artifice to defraud the Nevada Plaintiffs.

201.    Such conduct constituted a transaction, practice, or course of business which operated as a fraud or deceit upon the Nevada Plaintiffs.

202.    The Nevada Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust.

203.    Defendants, through their preparation or control of the content of the PPM and Supplement, controlled the direct seller of the securities with respect to the

CASE NO.                                                    COMPLAINT

content of the PPM and the Supplement.

204.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Nevada Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

205.   Thus, Defendants violated Nevada Revised Statutes §90.660 and are liable thereunder.  Therefore, pursuant to Nevada Revised Statutes §90.660, the Nevada Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

**TWENTY-FIRST CLAIM FOR RELIEF**
**for**
**VIOLATION OF NEW HAMPSHIRE REVISED STATUTES SECTION 421-B:5-509**
**Against all Defendants**

206.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

207.   Plaintiffs Calvin Roy Knights and Russell Lawson (the "New Hampshire Plaintiffs") were residents of the State of New Hampshire at the time they purchased their respective interests in the Trust.

208.   In connection with the sale and purchase of the investments and securities — the interests in the Trust — Defendants made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

209.   Defendants in the exercise of reasonable care could have known of the untruths and omissions in the PPM and Supplement.

210.   The New Hampshire Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust.

CASE NO.

COMPLAINT

211.    Defendants, through their preparation or control of the content of the PPM and Supplement, acted as agents of the direct seller of the securities.

212.    As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused New Hampshire Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

213.    Thus, Defendants violated New Hampshire Revised Statute §421-B:5-509 and are liable thereunder.  Therefore, the New Hampshire Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

**TWENTY-SECOND CLAIM FOR RELIEF**
**for**
**VIOLATION OF NORTH DAKOTA STATUTES SECTIONS 10-04-15 AND 10-04-17**
**Against all Defendants**

214.    Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

215.    Plaintiffs Robert F. Walford and Beverly J. Walford (the "North Dakota Plaintiffs") were residents of the State of North Dakota at the time they purchased their respective interests in the Trust.

216.    In connection with the sale and purchase of the investments and securities — the interests in the Trust — Defendants violated North Dakota Statutes Section 10-04-15 in that they made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

217.    The North Dakota Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust.

218.    Defendants, through their preparation or control of the content of the PPM and Supplement, were agents of and controlled the direct seller of the

securities with respect to the content of the PPM and the Supplement.

219.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused North Dakota Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

220.   Thus, Defendants violated North Dakota Statutes Section 10-04-15 and are liable under Section 10-04-17.  Therefore, pursuant to North Dakota Statutes Section 10-04-17, the North Dakota Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

**TWENTY-THIRD CLAIM FOR RELIEF**
**for**
**VIOLATION OF OKLAHOMA STATUTES T. 71, §1-509**
**Against all Defendants**

221.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

222.   Plaintiff George Spicer (the "Oklahoma Plaintiff") was a resident of the State of Oklahoma at the time he purchased his respective interests in the Trust.

223.   In connection with the sale and purchase of the investments and securities — the interests in the Trust — Defendants made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

224.   Defendants in the exercise of reasonable care could have known of the untruths and omissions in the PPM and Supplement.

225.   The Oklahoma Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust.

226.   Defendants, through their preparation or control of the content of the

PPM and Supplement, acted as agents of the direct seller of the securities.

227.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Oklahoma Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

228.   Thus, Defendants violated Oklahoma Statute T. 71, §1-509 and are liable thereunder.  Therefore, the Oklahoma Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

### TWENTY-FOURTH CLAIM FOR RELIEF
for
### VIOLATION OF PENNSYLVANIA STATUTES 70 P.S. SECTIONS 1-401, 1-501 AND 1-503
### Against all Defendants

229.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

230.   Plaintiffs Ronald A. Dinnocenti, Russell J. Gofus, Amber D. Gofus, Iris Hami, Igal Hami, and Sima Djiji (the "Pennsylvania Plaintiffs") were residents of the Commonwealth of Pennsylvania at the time they purchased their respective interests in the Trust.

231.   In connection with the sale and purchase of the investments and securities — the interests in the Trust — Defendants violated Pennsylvania Statutes 70 P.S. Sections 1-401 and 1-501 in that they made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

232.   The Pennsylvania Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust.

233.   Defendants were affiliates of the direct seller of the securities and,

through their preparation or control of the content of the PPM and Supplement, materially aided in the acts constituting the violations of Section 1-501.

234.   Defendants in the exercise of reasonable care could have known of the untruths and omissions in the PPM and Supplement.

235.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Pennsylvania Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

236.   Thus, Defendants violated Pennsylvania Statutes 70 P.S. Sections 1-401 and 1-501 and are liable under Sections 1-501 and 1-503.  Therefore, pursuant to Pennsylvania Statutes 70 P.S. Section 1-501, the Pennsylvania Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

## TWENTY-FIFTH CLAIM FOR RELIEF
### for
## VIOLATION OF TEXAS CIVIL STATUTES ART. 581-33
### Against all Defendants

237.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

238.   Plaintiffs William Craig, Gwendolyn Craig, Tommy Joaquin Hancock, Martha Agnew Hancock, Gerald H. Dubin and Elliot Silverstone (the "Texas Plaintiffs") were residents of the State of Texas at the time they purchased their respective interests in the Trust.

239.   In connection with the sale and purchase of the investments and securities — the interests in the Trust — Defendants made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

CASE NO.

COMPLAINT

240.    Defendants in the exercise of reasonable care could have known of the untruths and omissions in the PPM and Supplement.

241.    The Texas Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust and did not know of the untruths and omissions in the PPM and Supplement.

242.    Defendants, through their preparation or control of the content of the PPM and Supplement, acted as agents of the direct seller of the securities.

243.    As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Texas Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

244.    Thus, Defendants violated Texas Civil Statutes Art. 581-33 and are liable thereunder.  Therefore, the Texas Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

## TWENTY-SIXTH CLAIM FOR RELIEF
### for
## VIOLATION OF UTAH STATUTES SECTION 61-1-22
### Against all Defendants

245.    Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

246.    Plaintiff Brian J. Barnett (the "Utah Plaintiff") was a resident of the State of Utah at the time they purchased their respective interests in the Trust.

247.    In connection with the sale and purchase of the investments and securities — the interests in the Trust — Defendants violated Utah Statutes Section 61-1-1(2) in that they made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

CASE NO.

COMPLAINT

248.   Defendants, through their preparation or control of the content of the PPM and Supplement, controlled the direct seller of the securities with respect to the content of the PPM and the Supplement.

249.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Utah Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

250.   The Utah Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust.

251.   The Utah Plaintiffs did know of the untruths and omissions in the PPM and Supplement.

252.   Defendants knew or in the exercise of reasonable care could have known of the untruths and omissions in the PPM and Supplement.

253.   Thus, Defendants violated Utah Statutes Section 61-1-22 and are liable thereunder.  Therefore, pursuant to Utah Statutes Section 61-1-22, the Utah Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

254.   Further, Defendants' violations alleged herein were reckless or intentional, entitling the Utah Plaintiffs to an award an amount equal to three times the consideration paid for the security, which are the Interests in the Trust.

## TWENTY-SEVENTH CLAIM FOR RELIEF
### for
## VIOLATION OF 9 VERMONT STATUTES SECTION 5509
### Against all Defendants

255.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

256.   Plaintiff Dennis Bender (the "Vermont Plaintiff") was a resident of the State of Vermont at the time he purchased his respective interest in the Trust.

257.   In connection with the sale and purchase of the investments and

securities — the interests in the Trust — Defendants made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.

258.   Defendants in the exercise of reasonable care could have known of the untruths and omissions in the PPM and Supplement.

259.   The Vermont Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust.

260.   Defendants, through their preparation or control of the content of the PPM and Supplement, acted as agents of the direct seller of the securities.

261.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Vermont Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

262.   Thus, Defendants violated 9 Vermont Statutes Section 5509 and are liable thereunder.  Therefore, the Vermont Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

**TWENTY-EIGHTH CLAIM FOR RELIEF**
**for**
**VIOLATION OF VIRGINIA STATUTES SECTIONS 13.1.502 AND 13.1.522**
**Against all Defendants**

263.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

264.   Plaintiffs Robert D. Clark, Kenneth S. Stacey, and Kimberly Chappell (the "Virginia Plaintiffs") were residents of the Commonwealth of Virginia at the time they purchased their respective interests in the Trust.

265.   In connection with the sale and purchase of the investments and

CASE NO.

COMPLAINT

securities — the interests in the Trust — Defendants violated Virginia Statutes Sections 13.1.502 and 13.1.522 in that they made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.  Thus, Defendants sold such securities by means of fraud or misrepresentation.

266.   Defendants, through their preparation or control of the content of the PPM and Supplement, controlled the direct seller of the securities with respect to the content of the PPM and the Supplement.

267.   Defendants in the exercise of reasonable care could have known of the untruths and omissions in the PPM and Supplement.

268.   The Virginia Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust and did not know of the untruths and omissions in the PPM and Supplement.

269.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Virginia Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

270.   Thus, Defendants violated Virginia Statutes Sections 13.1.502 and 13.1.522 and are liable under Section 13.1.522.  Therefore, the Virginia Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

## TWENTY-NINTH CLAIM FOR RELIEF
### for
## VIOLATION OF WASHINGTON STATUTES SECTIONS 21.20.010 AND 21.20.430
### Against all Defendants

271.   Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

COMPLAINT

CASE NO.

272.   Plaintiffs Nils Gunther, Kathryn Gunther, James J. McElroy, and Julieann H. McElroy (the "Washington Plaintiffs") were residents of the State of Washington at the time they purchased their respective interests in the Trust.

273.   In connection with the sale and purchase of the investments and securities — the interests in the Trust — Defendants violated Washington Statutes Sections 21.20.010 and 21.20.430 in that they made the false statements of material fact in the PPM and Supplement alleged above and omitted the material facts alleged above that were necessary to make the statements in the PPM and Supplement, in the light of the circumstances under which they are made, not misleading.  Thus, Defendants sold such securities by means of fraud or misrepresentation.

274.   The Washington Plaintiffs justifiably relied on the misrepresentations and omissions by Defendants in investing in the Trust and did not know of the untruths and omissions in the PPM and Supplement.

275.   Defendants, through their preparation or control of the content of the PPM and Supplement, controlled the direct seller of the securities with respect to the content of the PPM and the Supplement.

276.   As alleged above, Defendants' false representations in the PPM and the Supplement and the representations made misleading as a result of Defendants' failure to disclose the omitted facts in the PPM and Supplement have caused Washington Plaintiffs to suffer damages, which includes the entire value of their respective investments in the Trust.

277.   Thus, Defendants violated Washington Statutes Sections 13.1.502 and 13.1.522 and are liable under Section 13.1.522.  Therefore, the Washington Plaintiffs sue for recission, damages, interest, costs and reasonable attorneys' fees.

/////

/////

/////

COMPLAINT

CASE NO.

# THIRTIETH CLAIM FOR RELIEF
## for
## FRAUD
### Against All Defendants

278.   Plaintiffs incorporates and re-alleges herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

279.   Defendants intentionally made the misrepresentations and omissions alleged above to Plaintiffs.

280.   Defendants intended for Plaintiffs to rely on their misrepresentations and omissions alleged herein.

281.   Plaintiffs were unaware of the falsity of the Defendants' misrepresentations and omissions alleged above.

282.   Plaintiffs reasonably relied on Defendants' misrepresentations and omissions alleged above.

283.   If Plaintiffs had known of the material misrepresentations in, and material information omitted from, the PPM and Supplement alleged herein, they would not have purchased the interests.

284.   As a proximate result of Defendants' deception, Plaintiffs have been damaged in amounts to be determined at trial.

285.   Defendants acted with the intent to cause injury to Plaintiffs. Defendants further engaged in despicable conduct carried out by them with a willful and conscious disregard of the rights of Plaintiffs.  Defendants thereby subjected Plaintiffs to cruel and unjust hardship.  Defendants acted with deceit and concealed material facts from Plaintiffs and concealed material facts from Plaintiffs, which are alleged above.  Nelson Defendants made these material misrepresentations and omissions to induce Plaintiffs to purchase the interests.  Pursuant to California Civil Code section 3294, such acts of oppression, fraud, and/or malice entitle Plaintiffs, in addition to the actual damages, to an award of punitive or exemplary damages for the sake of making an example of Defendants and by way of punishing them.

CASE NO.

COMPLAINT

**THIRTY-FIRST CLAIM FOR RELIEF**
**for**
**NEGLIGENT MISREPRESENTATION**
**Against All Defendants**

286.    Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

287.    As alleged above, Defendants made misrepresentations and omissions to Plaintiffs in the PPM and Supplement.  Defendants had no reasonable grounds for believing these misrepresentations were true and intended to induce Plaintiffs' reliance on the misrepresentations by purchasing the interests in the Trust.  Plaintiffs were ignorant of the truth and justifiably relied on these misrepresentations by purchasing the interests, as they had no reason not to believe the representations at the time they were made.

288.    Defendants had a legal duty to disclose the truth and the omitted facts to Plaintiffs.  Defendants breached these duties by failing to disclose the same to Plaintiffs.  Plaintiffs were unaware of the true facts and the material information that Defendants concealed from them.  Plaintiffs were damaged by Defendants' failure to the truth and their failure to disclose such material information to Plaintiffs.  Had Defendants fulfilled their legal disclosure obligations and disclosed the truth, Plaintiffs would not have purchased the interests in the Trust.

289.    As a proximate result of Defendants' negligent misrepresentations and omissions, Plaintiffs were damaged in an amount to be determined at trial.

**THIRTY-SECOND CLAIM FOR RELIEF**
**for**
**CONSPIRACY TO COMMIT FRAUD**
**Against All Defendants**

290.    Plaintiffs incorporate and re-allege herein by this reference paragraphs 1 to 74, inclusive, as though fully set forth at length.

291.    Plaintiffs are informed and believe and thereon allege that in connection with the execution of the JV LLC Agreement, Defendants did knowingly

CASE NO.

COMPLAINT

and willfully conspire and agree among themselves to: (1) misrepresent to Plaintiffs that the Trust would use the $75,480,000 in proceeds from the sale of the interests, in part, to repay the $35,000,000 in bridge capital provided by the Preferred Equity Providers and (2) to conceal from Plaintiffs the existence of the JV LLC Agreement and the sweeping rights granted in it to the Preferred Equity Providers.

292.    In furtherance of said conspiracy and agreement, the aforementioned Defendants engaged in fraudulent representations, omissions and concealment of facts, acts of cover-up and statements calculated to obtain from Plaintiffs the funds in which the invested in the Trust for Defendants' benefit and as detailed in this Complaint.  In particular, the conspiracy among Defendants is reflected in the secret JV LLC Agreement that Defendants agreed to keep confidential.

293.    All of the actions of Defendants as alleged in the preceding paragraphs of the Complaint, incorporated herein by reference, were in violation of the rights of Plaintiffs and were committed in furtherance of the aforementioned conspiracies and agreements.  Moreover, each of the Defendants lent aid and encouragement and knowingly financed, ratified, and adopted the acts of the other.  As a proximate result of the wrongful acts herein alleged, Plaintiffs have suffered significant damage, which is estimated to be a minimum of $34,833,207.11, or otherwise determined at trial.

294.    Defendants acted with the intent to cause injury to Plaintiffs. Defendants further engaged in despicable conduct carried out by them with a willful and conscious disregard of the rights of Plaintiffs.  Defendants thereby subjected Plaintiffs to cruel and unjust hardship.  Defendants acted with deceit and concealed material facts from Plaintiffs and concealed material facts from Plaintiffs, which are alleged above.  Defendants made these material misrepresentations and omissions to induce Plaintiffs to purchase the interests.  Pursuant to California Civil Code section 3294, such acts of oppression, fraud, and/or malice entitle Plaintiffs, in addition to the actual damages, to an award of punitive or exemplary damages for the sake of

1    making an example of Defendants and by way of punishing them.

2         WHEREFORE, Plaintiff request judgment as follows:

3         A.    An award of restitution or damages to each Plaintiff according to proof;

4         B.    An award of punitive damages to each Plaintiff as alleged in the Claims

5    for Relief above;

6         C.    An award of attorneys' fees and costs to the extent permitted by law or

7    contract; and

8         D.    Such other and further relief as the Court deems is just and appropriate.

9    Dated: August 10, 2021          **BROWNLIE HANSEN LLP**

10

11

12

13    _____
      ROBERT W. BROWNLIE
14    Robert.brownlie@brownliehansen.com
      Attorneys for Plaintiffs
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### DEMAND FOR JURY TRIAL

2          Pursuant to Local Rule 38-1 of the Local Rules of the United States District

3    Court for the Central District of California, Plaintiff hereby demands a trial by jury.

4    Dated: August 10, 2021          **BROWNLIE HANSEN LLP**

5

6

7

8                                    ROBERT W. BROWNLIE
                                     Robert.brownlie@brownliehansen.com
9                                    Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    COMPLAINT
                                          CASE NO.